STATE of Missouri, Plaintiff–Appellant,

v.

Joe F. JENKINS, Defendant–Respondent.

No. 21371.

Missouri Court of Appeals,
Southern District,
Division One.

May 29, 1997.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-appellant.

Erik A. Bergmanis, Camdenton, Mark Sachse, Kansas City, for defendant-respondent.

GARRISON, Judge.

The State of Missouri files this interlocutory appeal, pursuant to § 547.200,[1] from an order of the trial court granting a motion to suppress the results of a blood-alcohol test administered to Joe Jenkins (Defendant). We affirm.

"When reviewing a trial court's order suppressing evidence, the facts and reasonable inferences arising therefrom are to be considered favorably to the order challenged on appeal." *State v. Bibb*, 922 S.W.2d 798, 802 (Mo.App. E.D.1996). "We must disregard contrary evidence and inferences, and will affirm the trial court's ruling on a motion to suppress if the evidence is sufficient to sustain its findings." *State v. Schweitzer*, 879 S.W.2d 594, 595 (Mo.App. E.D.1994).

On September 3, 1995, Officer Henry of the Missouri State Water Patrol arrested Defendant at the Lake of the Ozarks on a charge of operating a vessel in an intoxicated condition, in violation of § 306.111.2. Following his arrest, Defendant was transported to the Camden County Sheriff's Office. Upon their arrival, Officer Henry informed Defendant that he would be offered the opportunity to take a breathalyzer test.[2] Defendant indicated that while he would agree to take a blood test, he would not agree to a breathalyzer test.[3] Officer Henry then took Defendant to Lake Ozark General Hospital, where Defendant's blood was drawn.

Defendant moved to suppress the results of the blood-alcohol test. The trial court granted Defendant's motion, holding that the blood test results were inadmissible because Officer Henry failed to notify Defendant of (1) the reason for requesting the test and (2) his right to refuse the test.[4]

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. The testimony of Officer Henry and Defendant differed on this point. Officer Henry testified that while they were in the parking lot *outside* the station, before going in, he informed Defendant that he *would be offered* a breathalyzer test. Defendant testified that Officer Henry *offered* him a breathalyzer test after they were *inside* the station.

3. Officer Henry testified that Defendant told him, "I'm going to give blood. I ain't blowing in no machine." Defendant, however, testified that he responded by saying, "I would not trust your results and my preference would be to have my blood taken."

4. After filing its brief in this case, Defendant filed a motion to dismiss the State's appeal. In the motion, Defendant alleged that the trial court granted his motion to suppress the blood-alcohol test results due to the lack of a proper evidentiary foundation. From this premise, Defendant contends that "[t]he State's failure to lay a proper foundation for the blood test results is not within the proper scope of a motion to suppress evidence and does not constitute 'suppressing evidence' within the meaning of § 547.200." *See State v. Holzschuh*, 670 S.W.2d 184, 185 (Mo. App. E.D.1984). Therefore, argues Defendant, the appeal is improper and should be dismissed.

The premise from which Defendant's argument flows is erroneous. Despite Defendant's contention to the contrary, the trial court did not suppress the blood-alcohol evidence due to a lack of foundation. It suppressed the evidence because the blood-alcohol test results were obtained without informing Defendant of (1) the reason for conducting the test and (2) his right to refuse to take the test.

"The 'suppression' of evidence is not the same thing as the exclusion of evidence on the basis of some rule of evidence. Suppression is a term used for evidence which is not objectionable as

Section 306.116.1 provides, in pertinent part:

Any person who operates a vessel upon ... the lakes of this state shall be deemed to have given consent to, subject to the provisions of sections 306.111 to 306.119, a chemical test or tests of his breath, blood, or saliva for the purpose of determining the alcohol or drug content of his blood if arrested for any offense arising out of acts which the arresting law enforcement officer had reasonable grounds to believe were committed while the person was operating a vessel upon the ... lakes of this state in violation of section 306.111 or 306.112.

Section 306.119.1 provides:

If an arresting officer requests a person under arrest to submit to a chemical test, such request shall include the reasons of the officer for requesting the person to submit to a test and shall inform the person that he may refuse such request but that his refusal may be used as evidence against him. If a person refuses a test as provided in this subsection, no test shall be given.

On this appeal, the State argues the following:

The trial court erred in suppressing the blood alcohol evidence because the blood alcohol evidence was lawfully obtained through the voluntary consent of the [Defendant], who insisted he wanted a blood test rather than submit to breath test and compliance with the "Implied Consent" laws were not necessary in this case since the blood sample was not obtained pursuant to the "Implied Consent" laws, but through the express voluntary consent of the [Defendant].

■ As framed by the parties, the issue is whether the blood test resulted from a request by Officer Henry that Defendant submit to a chemical test, rather than from Defendant's voluntary request that a blood test be performed. If it resulted from the officer's request, § 306.119.1 requires that the person arrested be told: (1) the officer's reasons for requesting that the person submit to the test and (2) that the person has a right to refuse the test. The evidence was uncontroverted that Officer Henry did not inform Defendant of either of those requirements.

We are cited to no cases interpreting § 306.119.1, and our own research has revealed none. The parties to this appeal, however, rely on cases involving requests that drivers of motor vehicles submit to chemical tests. Section 577.041.1, applying to such requests, provides, in pertinent part:

If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding under section 565.024 or 565.060, RSMo, or section 577.010 or 577.012. The request of the arresting officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license shall be immediately revoked upon his refusal to take the test.

Section 564.444, RSMo 1969, the predecessor to § 577.041.1, contained similar requirements by providing, in pertinent part:

1. If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given.

The case of *Bolling v. Schaffner*, 488 S.W.2d 212 (Mo.App. W.D.1972), addressed the issue of what constituted a "request" to submit to a chemical test pursuant to § 564.444, RSMo 1969. In its interpretation

violating any rule of evidence, but which has been illegally obtained." *State v. Dwyer*, 847 S.W.2d 102, 103 (Mo.App. W.D.1992).

The evidence of the blood test was held inadmissible not because of a rule of evidence, but because the evidence was illegally obtained. Hence, it was the proper subject of a motion to suppress and was therefore properly appealable by the state under § 547.200. Defendant's motion to dismiss the appeal is therefore denied.

of that statute, the *Bolling* court said the following:

> Section 564.444 V.A.M.S., supra, requires that the arresting officer make a "request" that the offender submit to a chemical test and that such "request" shall include (1) the reasons of the officer for requesting the person to submit to the test, and (2) that the offender's license may be revoked upon his refusal to take the test.

> We must view the word "request" as used in its usual and customary sense. The word is defined in Webster's New World Dictionary as—"an asking for, or expressing a desire for something; what is asked for; to ask a person to do something." We hold that the word as used in the statute and against the background of the purpose of this law as relating to offenses against public health and safety lies somewhere between a peremptory demand and a polite invitation. The provision of the statute is satisfied if the words of the request are such as to fully advise the offender that the arresting officer wants the chemical test made and is requesting that it be made. No particular words need to be used so long as the officer accompanies the request with the further requirements of the statute as to the reasons for the request and the possibility of license revocation, if the request is refused.

*Id.* at 215. There, the evidence indicated that while en route to the police station, the officer told the defendant that he would have an opportunity to take a breathalyzer test. *Id.* at 216. When they arrived, the officer asked him if he wanted to take the test. *Id.* The court held that this constituted a request. *Id.*

According to Officer Henry, he never made a formal request of Defendant to submit to a breathalyzer test. He testified that, while in the parking lot of the police station, he told Defendant that he would be offered a breathalyzer test once he was inside the station. He said that Defendant then "made a voluntary statement saying he wanted to give blood," which Officer Henry interpreted as voluntary consent to a blood test.

Using *Bolling* as our guide, we hold that Officer Henry's reference to the breathalyzer did indeed constitute a "request." By informing Defendant that he would be offered the opportunity to take a breathalyzer test, Officer Henry effectively advised Defendant that he wanted to obtain a chemical test. Because Officer Henry did not accompany that request with the further requirements of § 306.119.1, i.e., the reasons for the request and Defendant's right to refuse the test, the blood test results were obtained in violation of § 306.119.1.

The State argues, however, that implied consent is not the exclusive means of obtaining evidence of intoxication, citing numerous cases in support. In *State v. Lerette,* 858 S.W.2d at 816, 818 (Mo.App. W.D.1993), for instance, the court said: "Lerette's argument that the taking of the blood sample violated Missouri's Implied Consent law is misplaced because the State is not attempting to justify the search under implied consent, but rather under the 'exigent circumstances' exception to the search warrant requirement."

In the instant case, the State attempts to justify the search under the "voluntary consent" exception to the warrant requirement, contending that the Defendant's blood test results were not obtained pursuant to the Implied Consent laws, but via his express and voluntary consent. According to the State, "the blood sample taken in this case was with the voluntary consent of [Defendant] who, in fact, insisted on a blood test."

The State relies on *State v. Hyland,* 840 S.W.2d 219 (Mo. banc 1992), in which the court approved a warrantless search of the defendant's car, conducted with his consent. The *Hyland* court, citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), said: "Consent is freely and voluntarily given if, considering 'the totality of all the surrounding circumstances,' the objective observer would conclude that the person giving consent made a free and unconstrained choice to do so." *State v. Hyland,* 840 S.W.2d at 221 (citation omitted). The *Schneckloth* court went on to say that "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish

**16** 

such knowledge as the *sine qua non*[5] of an effective consent." *Schneckloth v. Bustamonte*, 412 U.S. at 227, 93 S.Ct. at 2048.

Section 306.119.1, however, requires the State to establish such knowledge as an indispensable condition to an effective consent. The language of the statute is clear. If an arresting officer requests an operator of a vessel to submit to a chemical test, then the request must be accompanied by (1) the reasons for making the request and (2) the operator's right to refuse the test.

The record before us reveals that Officer Henry requested Defendant to submit to a chemical test. Defendant's decision to have his blood drawn was not the result of an unsolicited desire to have his blood tested for alcohol; instead, it was clearly precipitated by Officer Henry's offer of a breathalyzer test. It was a direct and calculated response to the officer's request, which indicated Defendant's preference, for whatever reason, of submitting to a blood test rather than a breathalyzer test. Because Officer Henry requested Defendant to submit to a chemical test without informing him of the reasons for the test or his right to refuse, the results of the blood-alcohol test were properly suppressed.

Affirmed.

BARNEY, P.J., and PREWITT, J., concur.

---

5. *Sine qua non* is defined as "[a]n indispensable requisite or condition." Black's Law Dictionary 1242 (5th ed. 1979).