STATE of Missouri, Respondent,

v.

William Henry HYLAND, Jr., Appellant.

No. 74419.

Supreme Court of Missouri,
En Banc.

Oct. 27, 1992.

Donald R. Cooley, Springfield, for appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Elizabeth L. Ziegler, Asst. Attys. Gen., Jefferson City, for respondent.

ROBERTSON, Chief Justice.

In this case we consider whether consent given to "look inside" a suitcase found in the trunk of an automobile stopped for speeding is sufficient in scope to permit a law enforcement officer to inspect the contents of that suitcase by lifting articles of clothing. The trial court found the search did not exceed the scope of the consent and overruled the defendant's motion to suppress. A bare majority of the Court of Appeals, Southern District, en banc, reversed. We granted transfer, Mo. Const. Art. V, § 10, and now affirm the judgment of the trial court.

### I.

Monitoring traffic along Interstate 44 in Greene County on the afternoon of November 17, 1989, Sergeant Matt Brown of the Missouri Highway Patrol noticed a white Buick violating the 55 mile-per-hour speed limit. Radar measured the Buick's speed at 60 miles-per-hour. Sergeant Brown pursued the Buick until its driver stopped on the shoulder of the interstate.

Sergeant Brown approached the Buick intending to issue a written warning. When Sergeant Brown reached the driver's window, he informed the driver that his speed had exceeded the posted limit and asked to see his driver's license. The driver, William Hyland, handed Brown his Arizona driver's license and nervously volunteered that he was moving to New York from Arizona. Brown asked to see the Buick's registration papers. Hyland said that he did not own the car, that it was a "drive away" vehicle that he was transporting for hire to New York. Hyland handed Brown his "drive away" contract.

During this exchange, Brown noticed that he could not see any of Hyland's personal belongings in the car. Thinking this odd for a person moving permanently from one state to another, Brown asked Hyland about his things. Hyland said they were in the trunk. Brown noted that Hyland's demeanor continued to be nervous and uneasy.

Still holding Hyland's driver's license and the drive away contract, Brown asked Hyland for permission to look in the trunk. Hyland agreed, got out and walked to the trunk to open it. Brown saw a golf bag and caddy, a backpack, and a green, hard-sided suitcase sealed with duct tape. Thinking it unusual that duct tape sealed the suitcase, Brown asked Hyland for permission "to look inside the suitcase." Hyland removed the tape and lifted the lid revealing articles of clothing. Brown stuck his hand under the clothes and found a brick of vegetable matter wrapped in cellophane. Experience led Brown to believe he had found a brick of marijuana. Brown arrested Hyland. The laboratory later identified the vegetable matter as marijuana.

The State charged Hyland with possession of a controlled substance in violation of Section 195.202, RSMo 1986. Prior to trial, Hyland filed a motion to suppress the marijuana. The trial court overruled the motion after an evidentiary hearing. Specifically, the trial court found that Hyland had freely and voluntarily given Sergeant Brown consent to search the trunk of the Buick and that Hyland's consent "to look inside" the suitcase included permission to "enter the suitcase and look under the clothing."

The trial court found Hyland guilty following a bench trial and sentenced him to one year in prison. This appeal followed.

### II.

Hyland's single point on appeal assigns error to the trial court's failure to sustain his motion to suppress. Specifically, Hyland claims that the seizure of the marijuana violated the Fourth Amendment in that Sergeant Brown did not have probable cause to search the contents of the Buick; that Brown unlawfully detained Hyland beyond the time reasonably necessary to issue the traffic warning; and that Hyland's consent to "look inside" the suitcase did not extend to a search of the contents of the suitcase.

### A.

Hyland concedes the validity of the initial stop. Therefore, we turn first to consider

his contention that Brown unlawfully detained him beyond the time reasonably necessary to issue the written traffic warning. We agree with Hyland's contention that a vehicle stop under these conditions constitutes a seizure within the meaning of the Fourth and Fourteenth Amendments. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979).

 The issue Hyland raises reaches in two directions. First, if the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character (assuming no new factual predicate for reasonable suspicion is found during the period of the lawful seizure.) Second, the length of an otherwise lawful seizure is relevant to a determination of the voluntariness of the consent. We consider the second prong at C, *infra.*

 As to the first prong, the record reveals that Sergeant Brown's initial questions about Hyland's personal possessions occurred as, or immediately after, Hyland handed Brown the documentation necessary to complete the written traffic warning. Hyland's consent to the search of the trunk occurred during the time reasonably necessary to carry out the purposes of the traffic stop. Hyland's claims relating to the length of the stop are not supported by the record in this case and are thus devoid of merit.

### B.

 Hyland's hope that Sergeant Brown needed probable cause to seek consent to search Hyland's trunk can be quickly dashed. Where consent is lawfully obtained, law enforcement officers may conduct a search commensurate in scope with the permission given. This is so even though the search was not otherwise supported by probable cause or reasonable suspicion of criminal activity. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). "The Fourth Amendment ... merely proscribes those [searches] which are unreasonable.... Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno,* —— U.S. ——, ——, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991).

### C.

#### 1.

 We turn now to consider whether Hyland freely and voluntarily consented to the search of the trunk and its contents. A consent to search is valid only if it is freely and voluntarily given. *Schneckloth,* 412 U.S. at 222–3, 93 S.Ct. at 2045. Consent is freely and voluntarily given if, considering "the totality of all the surrounding circumstances," *id.* at 226, 93 S.Ct. at 2047, the objective observer would conclude that the person giving consent made a free and unconstrained choice to do so. *Schneckloth* expressly rejects any requirement that the suspect be told that he may refuse to consent.

 Hyland urges that Sergeant Brown's continued possession of his driver's license and drive away contract during the search created an atmosphere of coercion rendering Hyland's consent involuntary. Hyland assumes incorrectly that a seizure renders all subsequently given consent involuntary.

At the suppression hearing, Hyland chose not to offer any evidence. Only Sergeant Brown testified. He described a benign, non-coercive exchange during which Hyland nervously, but readily volunteered information and consented to Brown's several requests. The record is devoid of any evidence of coercion, any threatening tone or show of force. The record is also barren of any indication that Hyland requested or Brown denied permission for Hyland to leave. Neither is there any evidence that Hyland asked for, and Brown denied, the return of his driver's license. Within the normal period of detention for a traffic stop, Brown began his questioning of Hyland.

The trial court found no basis for concluding that the totality of the circum-

stances rendered Hyland's consent involuntary. Indeed, the trial court made a specific finding that Hyland gave his consent freely and voluntarily. Our review of that determination is limited to whether there was sufficient evidence to support the trial court's ruling. *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986). Having carefully considered the record, we find ample evidence to support the trial court's ruling.

Hyland freely and voluntarily consented to the search of the trunk of the automobile and to *some* inspection of the contents of the suitcase. The scope of the search to which Hyland consented is the sole question left for resolution.

### 2.

 Hyland argues that Sergeant Brown's request to "look inside" his suitcase and his assent to that request did not include consent to inspect the contents of the suitcase.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, —— U.S. at ——, 111 S.Ct. at 1803–4.

The briefs invite us to engage in a semantic exercise focusing on the meaning of the word "look." The State naturally argues that the word is an active one and includes permission to conduct a complete search; Hyland thinks the word is passive, limited to a superficial, visual inspection. The debate has meaning only within the context of the facts of the case. The relevant question is not simply the meaning of the verb "to look" but whether it was objectively reasonable for Sergeant Brown to consider that Hyland's permission to look inside the suitcase included consent to examine the contents of the suitcase. We think that it was.

In consenting to Sergeant Brown's request to look inside, Hyland placed no limitations on the scope of the search to which he consented. Further, Hyland stood without protest, holding the lid of the suitcase up, as Sergeant Brown placed his hand under the clothes and felt the brick of marijuana. A reasonable person, viewing this scene objectively, would necessarily conclude from Hyland's verbal and nonverbal actions that Hyland consented to the scope of the search Sergeant Brown conducted.

We hold that Hyland's consent extended to a search of the contents of the suitcase. The trial court did not err in overruling the motion to suppress.

### III.

The judgment of the trial court is affirmed.

All concur.