**STATE of Missouri, Plaintiff–Respondent,**

v.

**Helario Beltran GARCIA, Defendant–Appellant.**

No. 20670.

Missouri Court of Appeals, Southern District, Division One.

Sept. 25, 1996.

Rose M. Wibbenmeyer, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Kurt U. Schaefer, Assistant Attorney General, Jefferson City, for respondent.

BARNEY, Presiding Judge.

Following a bench trial, Helario Beltran Garcia (Defendant) was convicted of drug trafficking in the second degree in violation of § 195.223, RSMo 1994. Defendant contends on appeal that his Motion to Suppress should have been granted because the consent to search his vehicle was not freely and voluntarily given as Defendant could not

communicate in English well enough to give his consent. Additionally, Defendant asserts that even if he did consent to the search, he revoked that consent before the cocaine was discovered. Examination of the record shows that these contentions are without merit and, therefore, the judgment must be affirmed.

On November 14, 1994, Corporal Jack McMullin of the Missouri Highway Patrol was on duty in an unmarked vehicle near the intersection of Glenstone Avenue and Interstate 44 in Springfield, Missouri. Trooper McMullin testified that he was traveling west and entered the median to turn around and proceed east. As he did so, he observed Defendant's vehicle suddenly pull in behind another vehicle, almost colliding with it, and then the car brakes were applied so hard that the nose of the car dipped down. Trooper McMullin also observed that the car was traveling at a speed over the posted limit.

He pulled the car over[1] and noticed that there were two individuals in the vehicle. He approached and asked the driver, Juan Cardena, for his license and registration. Mr. Cardena produced an Illinois identification card and stated that he did not have a license. Defendant, the owner and passenger of the vehicle, produced the car registration and his Illinois driver's license. Mr. Cardena accompanied Trooper McMullin back to the patrol car and a computer check revealed that Mr. Cardena's license had been revoked. Trooper McMullin observed that there was no extra clothing in the car and that there was a very strong odor or fragrance coming from within the interior of the car. He stated that these strong fragrances are often used in vehicles to mask the odor of illegal drugs.

While in the patrol car, as Trooper McMullin was issuing Mr. Cardena a summons, Mr. Cardena stated that the two were coming from Houston, Texas, where he had been visiting his sisters and Defendant had seen his lawyer and gone to court. Mr. Cardena did not know Defendant's name.

Trooper McMullin returned Mr. Cardena's identification card and asked him if there was anything illegal in the car, to which Mr. Cardena responded "no." Trooper McMullin then asked if he could search the car. Mr. Cardena indicated that he did not mind but because it was Defendant's vehicle, Trooper McMullin should ask his permission.

Trooper McMullin asked Defendant for permission to search and Defendant verbally responded "okay" while gesturing with his hands and arms that it was acceptable to search the car. Trooper McMullin then asked Defendant for the keys from the ignition and Defendant handed him the keys. Trooper McMullin then searched the trunk of the car. After completion of the search of the trunk, Trooper McMullin asked Defendant to move to the driver's side as Mr. Cardena could not drive because his license had been revoked. Defendant moved to the left side of the vehicle and Trooper McMullin began to search the glove compartment. At this time, Defendant removed a visor clip from the visor of the vehicle and placed it in the glove box. As Trooper McMullin would remove papers from the glove box, Defendant would put them back in. This cycle continued several times until Trooper McMullin finally asked Defendant to hold the papers. It was at this time that Trooper McMullin discovered the cocaine in a heavily taped package behind a flap in the rear of the glove compartment.

Mr. Cardena and Defendant were arrested and informed of their *Miranda* rights. Trooper McMullin handed Defendant a *Miranda* card printed in both Spanish and English. Defendant appeared to read and understand the card and indicated by moving his head up and down and motioning with his hands that he understood his rights.

We note also that as the Defendant and Trooper McMullin were en route to Troop D Headquarters, Defendant asked what city he was in and Trooper McMullin informed him that it was Springfield, Missouri. Defendant

---

1. Defendant does not challenge Trooper McMullin's initial stop of the car or the duration of the stop.

then asked, "How long will I get for having one key?"[2]

Prior to trial, Defendant filed a Motion to Suppress alleging, *inter alia*, that consent to search the car was not given knowingly and voluntarily because Defendant is Spanish speaking and does not understand English well enough to have consented. Defendant also claimed that even if consent was given, it was revoked prior to Trooper McMullin's discovery of the cocaine.

■ The State has the burden of showing by a preponderance of the evidence that a motion to suppress should be denied. § 542.296.6; *State v. Franklin,* 841 S.W.2d 639, 644 (Mo. banc 1992); *State v. Looney,* 911 S.W.2d 642, 644 (Mo.App.1995); *State v. Perrone,* 872 S.W.2d 519, 521 (Mo.App.1994). Appellate review of a motion to suppress is limited to a determination of the sufficiency of the evidence to sustain the trial court's finding. *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990); *State v. Cook,* 854 S.W.2d 579, 581 (Mo.App.1993). We are to reverse the trial court's ruling only if that ruling is clearly erroneous. *State v. Talbert,* 873 S.W.2d 321, 323 (Mo.App.1994). "If the trial court's ruling 'is plausible in light of the record viewed in its entirety' this court 'may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.'" *Looney,* 911 S.W.2d at 644; *Cook,* 854 S.W.2d at 581. Additionally, it is well established that we "defer to the trial court's vantage point in assessing the credibility of the witnesses and weighing the evidence." *Id.; see also Burkhardt,* 795 S.W.2d at 404.

■ As a general rule, searches conducted without a search warrant are unreasonable and violate a defendant's Fourth Amendment rights. *Looney,* 911 S.W.2d at 644; *State v. Morr,* 811 S.W.2d 794, 797 (Mo.App.1991). However, a consensual search conducted without a search warrant does not violate the Fourth Amendment, even though the search is not otherwise supported by probable cause or a reasonable

suspicion of criminal activity. *Cook,* 854 S.W.2d at 582. The consent, in essence, waives the defendant's Fourth Amendment rights. *Id.*

■ To be valid, the consent must be freely and voluntarily given by a person with the authority to consent and the search must not exceed the scope of the consent given. *State v. Hyland,* 840 S.W.2d 219, 221–22 (Mo. banc 1992). Consent to search may be expressly given or it may be implied by a defendant's actions. *See State v. Dees,* 639 S.W.2d 149, 155 (Mo.App.1982). Consent is freely and voluntarily given if, considering the totality of the circumstances, the objective observer would conclude that the person giving consent made a free and unconstrained choice to do so. *Hyland,* 840 S.W.2d at 221. This Court must determine what the "typical reasonable person" would have understood by the exchange between the officer and Defendant. *State v. Engel,* 859 S.W.2d 822, 827 (Mo.App.1993).

■ The evidence does not show signs of any threats, coercion or force by Trooper McMullin. Instead, Defendant's entire argument is based upon the proposition that his inability to communicate and understand the English language rendered his consent to search the vehicle involuntary. In examining the totality of the circumstances, this Court does not find that Defendant's English skills were so inadequate as to have rendered the consent involuntary.

Trooper McMullin's testimony revealed the following:

Q. [By the State] You asked Mr. Garcia for permission to search?

A. Yes, I did.

Q. What exactly did you say to him?

A. I asked him if I could search the car.

. . . .

Q. Okay. Did you use the word search?

A. Yes, I did.

Q. Okay. What did Mr. Garcia say or do after that request?

---

2. In argument before the trial court the State contends that "key" referred to a "kilo [kilogram] of cocaine."

A. He said okay, and he indicated by turning in the seat and, you know, okay.

Q. You gestured with your hand, like go ahead, is that what you're saying?

A. Yes.

Q. All right. So what happened then?

A. I asked him to hand me the keys that were in the ignition.

Q. Referring to Mr. Garcia?

A. Mr. Garcia. He did that.

Q. Were you having any difficulty communicating with Mr. Garcia as you are having conversations with him?

A. He has broken Spanish, but we were able to communicate, we were able to talk. Because, as I stated, when I asked for the registration earlier, he produced it. There were certain questions that I asked him that he indicated he understood. And I asked about the name and he said his name was Beltran, it wasn't Garcia.[3] I asked him about the trip and he told me they were coming from Houston [Texas]. And I asked him, you know, for what reason had they gone down there and he attempted to explain to me that he had gone down for immigration purposes and that he had to post a bond down there. I believe the—I don't remember the amount, but he did produce papers at that time showing where he had posted a bond while down there.

The testimony demonstrates that while Defendant's English was broken, Trooper McMullin did not have difficulty communicating with him. The trial court stated in its ruling on the Motion to Suppress that:

Although defendant's native tongue is Spanish, and the Court required a Spanish speaking interpreter to be present during the motion hearing, nonetheless, defendant could communicate with the trooper in simple English and appeared to understand the conversation. Defendant appeared to understand Trooper McMullin's request to search, indicating that it was 'okay', nodded his head in the affirmative, and gestured with his hands in an affirmative manner.

After hearing the testimony, the trial court specifically found that Defendant was able to communicate and understand Trooper McMullin's request to search. Considering the totality of the circumstances, we conclude that an objective observer could have concluded that Defendant knowingly and voluntarily gave Trooper McMullin his consent to search the vehicle.

■■■ As to whether Defendant's actions constituted a revocation of consent when he continuously placed the papers back in the glove box as Trooper McMullin removed them, the trial court stated: "[a]lthough there was some interference on the part of defendant in the search of the glove box, the facts do not indicate that the defendant was withdrawing the consent to search when he kept putting the papers back in the glove box." Therefore, it is apparent that the trial court's assessment of the situation was that Defendant's actions were not sufficient to revoke his consent to search the car. The record supports the trial court's conclusion.

Although Defendant engaged in a bit of "cat and mouse" with Trooper McMullin with regard to the papers in the glove compartment, he at no time indicated his desire for the search to stop. When Trooper McMullin finally requested Defendant to hold the papers briefly, Defendant complied and allowed the search to continue. A reasonable person would necessarily conclude from Defendant's verbal and non-verbal actions that he consented to a search of the entire vehicle, including the glove compartment. *State v. Hyland,* 840 S.W.2d at 222.

■■■ In the argument portion of the brief only, Defendant also asserts that the statement made by Defendant after he had been arrested must be suppressed as "fruits of the poisonous search." "A reviewing court is obliged to determine only those questions stated in the points relied on. Issues raised only in the argument portion of the brief are not presented for review." *State v. Williams,* 887 S.W.2d 769, 770–71 (Mo.App. 1994). The argument, in any event, is moot as this Court has already found that the search of Defendant's automobile was valid.

---

**3.** During sentencing Defendant acknowledged that his full name was Helario Beltran Garcia.

We, therefore, conclude that the trial court did not err when it overruled Defendant's motion to suppress the evidence. Accordingly, the judgment is affirmed.

GARRISON and PREWITT, JJ., concurs.