**STATE of Missouri, Respondent,**

v.

**Joseph W. MIDDLETON, Appellant.**

No. 23631.

Missouri Court of Appeals,
Southern District,
Division Two.

April 26, 2001.

H. Mark Preyer, Kennett, for Appellant.

Jeremiah W. (Jay) Nixon, Atty.Gen., and Stephanie Morrell, Asst. Atty. Gen., Jefferson City, for Respondent.

Before BARNEY, C.J., GARRISON, and RAHMEYER, JJ.

PER CURIAM.

Appellant, Joseph W. Middleton, ("Middleton") appeals his conviction after a bench trial for the Class B felony of possession of a controlled substance with intent to deliver, § 195.211, RSMo Cum. Supp.1998, and the Class C felony of possession of a controlled substance, § 195.202, RSMo 1994. He was sentenced to concurrent terms of eight years for intent to deliver and five years for possession, to be served in the Missouri Department of Corrections. This appeal arises from the trial court's denial of Middleton's motion to suppress three small bags containing methamphetamine and LSD, located in a Tylenol bottle found by deputy sheriff, Matt Fowler, after a pat down search of Middleton's right front jeans pocket.

Middleton raises two points of motion court error. First he premises motion court error in denying his motion to suppress on the basis that he gave no consent to have his person searched by Deputy Fowler. Second, he contends that once the pat down search revealed that the Tylenol bottle and its contents was not a weapon, its subsequent seizure violated Middleton's rights to be free from unreasonable search and seizure. Both points are related and will be reviewed conjunctively.

Middleton was stopped for speeding on Highway 164 in Pemiscot County. Deputy Fowler checked Middleton's driver's license and proof of insurance. While writing up a warning ticket for speeding and for having tinted windows on his pick-up truck, Deputy Fowler noticed that Middleton was acting "real nervous." Upon further inquiry, Middleton replied that he was nervous because he was "in a hurry to go see [his] girlfriend." Deputy Fowler then asked Middleton if he had any weapons or drugs inside his vehicle or on his person and he replied no. Deputy Fowler asked Middleton, "do you care if I search?" Middleton responded, "yeah, you can search ." Deputy Fowler then asked Middleton to exit his vehicle and conducted a pat down search of Middleton's person for weapons.

During the course of the pat down, Deputy Fowler felt "a large bottle in [Middleton's] right front [pants] pocket." When questioned about it, Middleton responded that the bottle contained Tylenol. Then with his hands on the outside of Middleton's pants, Deputy Fowler shook the bottle, but felt nothing rattling around. He testified that he asked Middleton "if he would take it out of his pocket." The deputy related that Middleton asked, "why" and then "reached in his pocket and didn't pull it back out." Deputy Fowler testified that he then asked Middleton, "do you care to take that out of [your] pocket and he said yeah ... [h]e said yeah, he reached back in and never would pull it out." Whereupon Deputy Fowler stated that he asked Middleton if he, Deputy Fowler, could get the bottle out of his pants pocket, and Middleton replied, "yes ." Deputy Fowler then reached into Middleton's pocket and retrieved the bottle. Deputy Fowler related that he asked Middleton if he could open it and Middleton replied in the affirmative.

Upon opening the bottle, Deputy Fowler found a powdery substance later determined to be separated in three small bags. Forensic laboratory tests revealed that substances found inside the bottle were LSD and methamphetamine.[1]

1. At the suppression hearing, Middleton repeatedly denied that he had ever consented to the removal or the opening of the bottle in question. While he acknowledged that Deputy Fowler said "do you care if I search," and that he responded in the affirmative, Middle-

Deputy Fowler acknowledged that the purpose of the pat down was not a search for drugs, but for weapons. He also acknowledged that after he had felt of the bottle through the pants, he didn't think that it was a weapon of any kind. To the question relating to the bottle, "[a]nd there's not anything that caused any danger or risk or harm to you, was there?," he answered, "I don't suppose." Lastly, to the question, "you never told him he was free to go, though as far as you were concerned, really he was free to go?," he answered, "Yes," and acknowledged that he "had no reason to keep him any further."

■■■ "(O)ur review of the trial court's alleged error in denying the motion to suppress is limited to determining whether there is sufficient evidence to sustain the court's ruling." *State v. Woolfolk*, 3 S.W.3d 823, 828 (Mo.App.1999); *State v. Fuente*, 871 S.W.2d 438, 441 (Mo. banc 1994). "When determining the sufficiency of the evidence, we may consider the record made at the pre-trial hearing and the record made at trial." *Woolfolk*, 3 S.W.3d at 828. "We review under an abuse of discretion standard." *Id.; State v. Milliorn*, 794 S.W.2d 181, 183–84 (Mo. banc 1990). "The trial court's ruling on a motion to suppress evidence will be affirmed unless it is clearly erroneous." *Woolfolk*, 3 S.W.3d at 828. "If the ruling is plausible, in light of the record viewed in its entirety, we will not reverse, even if convinced we

would have weighed the evidence differently." *Id.* "Although we review the facts under a clearly erroneous standard, the issue of whether the Fourth Amendment has been violated is a question of law which we review *de novo.*" *Id.; State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998).

■■■ Middleton does not challenge the constitutionality of the initial stop. Unquestionably "[a] police officer is authorized to stop a vehicle observed violating the traffic laws of the state." *State v. Slavin*, 944 S.W.2d 314, 317 (Mo.App. 1997). Nevertheless, " 'a vehicle stop to issue a written traffic warning for speeding is a seizure within the meaning of the Fourth and Fourteenth Amendments.' " *Id.* (quoting *State v. Stevens*, 845 S.W.2d 124, 128 (Mo.App.1993)). "A traffic stop significantly curtails the 'freedom of action' of the driver...." *State v. Kovach*, 839 S.W.2d 303, 311 (Mo.App.1992). "The general principle is that 'searches conducted outside of the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' "[2] *State v. Leavitt*, 993 S.W.2d 557, 560–61 (Mo.App.1999) (quoting *State v. Hutchinson*, 796 S.W.2d 100, 104 (Mo. App.1990) (citations omitted)).

■■■ "A search is not unreasonable under the Fourth Amendment if it is: (1) a

---

ton testified that he understood the request to be the search of his truck. Middleton expressly denied that Deputy Fowler had specifically asked him to search his person and denied that he gave Deputy Fowler permission to search either his "body," or "any kind of pants pocket, shirt pocket or anything." Middleton related, "I started getting out [of the vehicle] and he went to pat me down."

**2.** "Article I, § 15 of the Missouri Constitution provides that 'the people shall be secure in

their persons, papers, homes and effects, from unreasonable searches and seizures....' This provision parallels the Fourth Amendment of the United States Constitution, which preserves '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....' " *State v. Rushing*, 935 S.W.2d 30, 34 (Mo. banc 1996). "The state and federal constitutional protections from unreasonable searches and seizures are coextensive." *Id.*

search incident to a lawful arrest; (2) a seizure of items falling within the plain view doctrine; (3) a search of an automobile where probable cause exists to believe that it contains a substance which offends the law; or (4) a protective search by officers for weapons upon less than probable cause to arrest." *Id.* Here, Middleton contends that the first three of the foregoing four exceptions are not applicable to the facts of the present case. The State does not contest this assertion. Middleton centers his argument on the fourth exception set out *supra.* He contends that Deputy Fowler exceeded the scope of authorized conduct, following a pat down for weapons, when he retrieved the Tylenol bottle from Middleton's pants. In this respect he is correct. "Once a valid stop has been made, police may pat a suspect's outer clothing if they have a reasonable, particularized suspicion that the suspect is armed." *Id.* at 561; *see Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). The purpose of this limited search is not to discover evidence of crime, but allow an officer to pursue his investigation without fear of violence. *Rushing,* 935 S.W.2d at 32. Once an officer determines that an object is not a weapon and that he is not concerned for his safety, his "Terry" search is over. *Leavitt,* 993 S.W.2d at 563.

In the instant matter, Deputy Fowler acknowledged on cross-examination that when he felt of the Tylenol bottle through Middleton's pants, he didn't think it was a weapon of any kind. He also acknowledged that there was nothing about the bottle that posed a risk of harm. Accordingly, the rest of the search by Deputy Fowler involving the retrieval of the bottle and review of its contents was not justified as a protective search, nor could it be justified as an exception to the Fourth and Fourteenth Amendment warrant requirement. *Id.*

The State counters, however, that the Tylenol bottle was not removed as part of a pat down search, but rather as a result of a *consent* by Middleton to the removal of the bottle *after* the pat down search occurred. Middleton denies that the retrieval of the Tylenol from his pants pocket was consensual.

"A consensual search conducted without a search warrant does not violate the Fourth Amendment, even though the search is not otherwise supported by probable cause or a reasonable suspicion of criminal activity." *Leavitt,* 993 S.W.2d at 563; *Woolfolk,* 3 S.W.3d at 831; *State v. Garcia,* 930 S.W.2d 469, 472 (Mo.App. 1996). "An officer may at any time ask a citizen whether he has contraband in his car and may ask for permission to search." *Woolfolk,* 3 S.W.3d at 831; *State v. Hyland,* 840 S.W.2d 219, 221 (Mo. banc 1992).[3] "For consent to be valid it must be freely and voluntarily given by a person with the authority to consent and the search must not exceed the scope of the consent given." *Leavitt,* 993 S.W.2d at 563. "The burden is on the state to prove by a preponderance of the evidence the consent was voluntary and not the product of duress, coercion or fraud." *State v. Jacobs,* 704 S.W.2d 300, 302 (Mo.App. 1986). "This burden is placed on the State because warrantless searches are presumptively unreasonable." *State v. Weddle,* 18 S.W.3d 389, 396 (Mo.App.2000).

" 'Consent is freely and voluntarily given if, considering the totality of the circumstances, the objective observer would conclude that the person giving consent made a free and unconstrained choice

---

**3.** *Hyland* expressly rejected any requirement that a suspect must be told he may refuse to consent. *Hyland,* 840 S.W.2d at 221; *State v. Scott,* 926 S.W.2d 864, 870 (Mo.App.1996).

to do so.'" *Leavitt,* 993 S.W.2d at 563 (quoting *Garcia,* 930 S.W.2d at 472). "However, the State does not satisfy its burden of showing that consent was voluntary merely by showing a submission to a claim of lawful authority." *Id.; State v. Talbert,* 873 S.W.2d 321, 324 (Mo.App. 1994).

■ Here, Deputy Fowler noticed the bottle in Middleton's pants pocket during the course of the pat down. After Middleton informed him it was Tylenol, Deputy Fowler testified that he, Deputy Fowler, grabbed the pants pocket and "kind of shook it around." Deputy Fowler also related that he then asked Middleton to take the bottle out of his pocket and Middleton made a gesture as if to retrieve the bottle but failed to do so. Deputy Fowler then expressly asked if he would take the bottle out of his pocket and Middleton responded, "yeah." According to Deputy Fowler Middleton "reached back in" but "never would pull it out." Finally, Deputy Fowler then asked Middleton, "can I get it out of your pocket and *he said yes.*" (Emphasis added.) Pursuant to this consent Deputy Fowler reached into Middleton's pants pocket himself, retrieved the bottle and opened it. Although the evidence shows that Middleton was reluctant to cooperate with Deputy Fowler in retrieving the bottle from his pants pockets, he nevertheless, gave his consent for Deputy Fowler to do so.

■ "Consent to search may be expressly given or it may be implied by a defendant's actions." *Garcia,* 930 S.W.2d at 472. As in *Garcia,* the evidence does not show signs of any "threats, coercion or force by [Deputy Fowler]." *Id.* Deferring, as we must, to the motion court's vantage point in assessing the credibility of the witnesses and weighing the evidence, *id.,* at 472, the record shows that at no time did Middleton expressly deny Deputy

Fowler the right to continue his search nor did he expressly state to Deputy Fowler that he was withdrawing his consent to the retrieval of the bottle.

Middleton argues that this Court should follow the ruling in *Leavitt,* where the appellate court held that "an objective observer would not conclude that Respondent made a free and unconstrained choice to consent to empty her pockets." *Leavitt,* 993 S.W.2d at 563. However, the facts in *Leavitt* are distinguishable from the facts before us. In *Leavitt,* the officer testified that he did not ask for consent of the respondent to remove her makeup case and open it, but instead ordered her to do so. *Id.* Here, the record is clear that Deputy Fowler asked Middleton if he could retrieve the bottle. Indeed, Middleton consented to the opening of the bottle for Deputy Fowler's inspection. It is our view that while Middleton may have expressed a reluctance to personally retrieve the bottle from his pants pocket, he, nevertheless, consented to Deputy Fowler doing so. By consenting, Middleton essentially waived his Fourth Amendment rights. See *id.*

We cannot say that the motion court abused its discretion in failing to suppress the evidence of drug contraband. Considering the totality of the circumstances, the motion court's determination is plausible. *Woolfolk,* 3 S.W.3d at 828. A reasonable person would conclude from Defendant's verbal and non-verbal actions that he consented to the search of his person. *Hyland,* 840 S.W.2d at 222; *Garcia,* 930 S.W.2d at 473. Point denied.

The judgment is affirmed.