**STATE of Missouri, Plaintiff–Respondent,**

v.

**Daniel Alan CHARLTON, Defendant–Appellant.**

No. 24766.

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 2003.

Motion for Rehearing or Transfer
Denied Aug. 21, 2003.

Application for Transfer Denied
Sept. 30, 2003.

Michael Baker, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck A. Burgess, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Daniel Alan Charlton ("Appellant") was convicted, following jury trial, of one count of manufacturing a controlled substance, methamphetamine, a violation of Section 195.211.[1] The trial court entered judgment in accordance with the jury's verdict and sentenced Appellant to seven years imprisonment. We affirm.

Viewed in the light most favorable to the verdict, the evidence revealed the following: On July 29, 2000, James Rackley ("Rackley"), an officer with the Lebanon, Missouri police department, was cam-

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

paigning door-to-door for the office of sheriff of Dallas County, Missouri. Rackley was off-duty, not in uniform, and operating in a private capacity at all times pertinent herein.

In the course of his campaigning that evening, Rackley went to Appellant's home, located nine miles south of Buffalo, Missouri, approximately one quarter of a mile off State Highway TT. To reach Appellant's home, Rackley passed through an open gate and traversed a private gravel driveway that crossed a small creek. Appellant's home lay beyond a stand of trees that, at that time of the year, obstructed Rackley's view of the home from Highway TT. No sign was posted warning visitors against trespassing.

Upon arriving at Appellant's home, Rackley observed marijuana plants growing in a white plastic bucket and in a flowerbed abutting Appellant's house. When Rackley got out of his vehicle, Appellant's dog bit his pant leg. Appellant came out of his house and restrained the dog. Rackley introduced himself, informed Appellant about his campaign, and left a campaign flier with him before leaving. No mention was made of the marijuana plants Rackley had observed.

Rackley went immediately to the Dallas County sheriff's department where he contacted Deputy Aaron Walker ("Walker") and told him of the marijuana growing in Appellant's flowerbed. Walker called the sheriff of Dallas County, Billy Blair ("Blair"), who instructed Walker to go to Appellant's residence with Rackley and two other deputies to investigate Rackley's claim.

Upon arriving at Appellant's home, Walker saw the marijuana growing in the flowerbed. When Appellant came out of the house and asked why the officers were there, Walker placed him under arrest for cultivating marijuana. When Appellant told Walker his wife, Diane Charlton, was in the house, she was summoned from the house and also placed under arrest. Walker asked Appellant for permission to search the home, which Appellant refused.

Appellant and his wife were taken to the Dallas County jail, with one deputy staying behind to guard Appellant's property while a search warrant was sought. Walker obtained a warrant, based upon affidavits provided by himself and Rackley, and returned to Appellant's home with Blair and several deputies to execute the warrant. In the course of executing the search warrant, Blair discovered what he believed to be a makeshift methamphetamine laboratory ("meth lab") in a bedroom closet.

Blair left the room and contacted officers with a specialized multi-jurisdictional task force experienced in "taking down" such meth labs, which typically contain extremely dangerous chemicals. Upon their arrival, the meth lab was disassembled and several items were seized from Appellant's bedroom, including the following: methamphetamine, a book entitled "Secrets of Methamphetamine Manufacture," by Uncle Fester, Priority Mail cardboard book packaging, into which the book fit and bearing the name "D. Charlton" and the addresses of Appellant and Amazon.com, an online bookseller, a green notebook containing chemical formulas used in the manufacture of methamphetamine and phone numbers and references to pagers, pseudoephedrine, a list of manufacturers of matches (from which red phosphorous, an ingredient in the methamphetamine manufacturing process, may be obtained), an electric skillet coated with a white crusty substance, a bottle of Red Devil Lye, a bottle of Heet, needles, coffee filters, a measuring cup, a funnel, a thermometer, plastic tubing, three pill grinders, a bottle of iodine, two bottles of isopropyl alcohol, a turkey baster, a ma-

son jar containing toluene, three packages of litmus paper, a mason jar containing a clear fluid, two glass jars containing eye droppers, a mason jar one-quarter full of blue liquid, a mason jar containing four distinct layers of liquid, a hand pump, an aquarium pump, three beakers, one of which was attached to tubing, a bottle of muriatic acid, and a one-gallon can of Coleman fuel.

In a second room in Appellant's house, the officers found a gas mask, methamphetamine paraphernalia, a mirror with razor blades and drinking straws next to it, boxes of the over-the-counter cold medicine Sudafed, a jar containing liquid and white powder, measuring scales, a spoon, scissors, and several sandwich bags, the corners of which had been cut off. Additionally, the kitchen contained a small Tupperware container in which powdered pseudoephedrine was found. No evidence of drug possession or manufacturing was discovered in the bedroom of Appellant's teenage son.

Appellant presented no evidence at trial. At the close of evidence, the jury found him guilty of manufacturing a controlled substance. As Appellant had waived his right to jury sentencing, the trial court sentenced him to seven years imprisonment. This appeal follows.

Appellant raises six points on appeal. In his first point, he claims the trial court erred in overruling his motion to suppress and quash the search warrant, and in admitting, over his objection, exhibits seized on the basis of that warrant, and testimony concerning them, because the items "were seized as a result of an illegal and unconstitutional search of Appellant's residence and its curtilage." Specifically, Appellant claims the search and seizures in question violated the Fourth Amendment in that, first, the "initial search and arrest of Appellant was made without a warrant" and

in the curtilage of his home and, second, the information used to support the subsequent issuance of the search warrant was obtained by way of an illegal trespass, namely, when deputies went to Appellant's home to search it on the basis of Rackley's observations.

When reviewing a trial court's ruling on a motion to suppress, our inquiry is limited to a determination whether there is sufficient evidence to support the trial court's ruling. *State v. Middleton*, 43 S.W.3d 881, 884 (Mo.App. S.D.2001) (citing *State v. Fuente*, 871 S.W.2d 438, 441 (Mo. banc 1994); *State v. Woolfolk*, 3 S.W.3d 823, 828 (Mo.App. W.D.1999)). In making this determination, we are to affirm the trial court's finding unless it is clearly erroneous. *Middleton* at 884 (citing *Woolfolk* at 828). Although we review the facts under this "clear error" standard, our review of claims that the Fourth Amendment has been violated is *de novo*. *Middleton* at 884 (citing *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998)).

The first prong of Appellant's argument under this point alleges the unconstitutionality of his arrest in that it occurred allegedly within the curtilage of his home and without a warrant. This argument need not be addressed, however, because no evidence was seized incident to Appellant's arrest, rendering the constitutionality of the arrest irrelevant to Appellant's motion to suppress.

The second prong of Appellant's argument asserts that the search warrant was tainted by the illegality of the deputies' entry on Appellant's property for the purpose of investigating Rackley's account of having seen marijuana plants growing there. Appellant argues he had a reasonable expectation of privacy in the flowerbed adjacent to his home, which could not be seen from the state highway some

distance from the house. He argues at length that the flowerbed constituted part of the curtilage of his home and was, therefore, subject to the Fourth Amendment's prohibition of unreasonable search and seizure. *See State v. Schweitzer,* 879 S.W.2d 594, 596 (Mo.App. E.D.1994).

However, the issue whether the deputies' entry on Appellant's property violated the Fourth Amendment is irrelevant because the search warrant Appellant sought to quash was supported by probable cause even if the observations of Walker and the other deputies are not considered. The initial observation of the marijuana plants on Appellant's property was made by Rackley, an off-duty police officer campaigning door-to-door for election as sheriff. Rackley's affidavit describing what he saw outside Appellant's home was included with the State's application for the search warrant and supplied ample probable cause to support the issuance of the warrant.

■ The only question to be answered, then, is whether Rackley, acting in a private capacity, was subject to the strictures of the Fourth Amendment. He clearly was not. The law is well settled that the Fourth Amendment is inapplicable to searches or seizures effectuated by private citizens not acting at the behest of a government entity. *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048, 1051 (1921); *State v. Brasel,* 538 S.W.2d 325, 330 (Mo. banc 1976); *State v. Horsey,* 676 S.W.2d 847, 854 (Mo.App. S.D.1984). We have previously stated that "[a]n off duty police officer is not automatically acting in concert with or at the direction of government officials simply because he discovers contraband." *State v. Woods,* 790 S.W.2d 253, 257 (Mo.App. S.D. 1990) (quoting *State v. Castillo,* 108 Idaho 205, 697 P.2d 1219, 1221 (1985)). "Official involvement is not measured by the pri-

mary occupation of the actor, but by the capacity in which he acts at the time in question." *Id.* (quoting *State v. Pearson,* 15 Or.App. 1, 514 P.2d 884, 886 (1973)).

■ Here, Rackley was not employed by the Dallas County sheriff's department and was not performing duties attendant to his position as a Lebanon police officer. He was not acting as an agent of the state when he entered Appellant's property and was, therefore, not subject to the Fourth Amendment. His observations provided probable cause for the issuance of the search warrant and it was not error for the trial court to deny Appellant's motion to quash the warrant due to a Fourth Amendment violation. Point one is denied.

In Appellant's second point, he contends the trial court abused its discretion in admitting testimony and a prosecution exhibit concerning the discovery of marijuana plants on Appellant's property because "it was propensity evidence and evidence of other crimes not properly related to the crime for which Appellant was on trial." Appellant also argues the evidence's probative value was outweighed by its unduly prejudicial effect, given Appellant's stated willingness to stipulate that the deputies were on Appellant's property to execute a search warrant.

■ The trial court has broad discretion in the admission or exclusion of evidence, and this court will not disturb the trial court's ruling on such matters absent an abuse of discretion. *State v. Smith,* 97 S.W.3d 560, 562 (Mo.App. S.D.2003); *State v. Benwire,* 98 S.W.3d 618, 626 (Mo.App. W.D.2003). We review for prejudice and not mere error, and will affirm the trial court's ruling unless it was so prejudicial as to deprive the appellant of a fair trial. *Smith* at 562.

At trial, Walker testified that when he and two other deputies went to Appellant's

home with Rackley, he observed marijuana plants growing in the flowerbed adjacent to Appellant's home. He also testified that Appellant was arrested for cultivating marijuana. State's Exhibit Two, the return and inventory of items seized pursuant to the search warrant, originally listed items seized that were unrelated ·to the charge of manufacturing methamphetamine but, upon Appellant's objection to the admission of those items, they were obliterated from the inventory with a black marker prior to the exhibit's admission into evidence. Questioned concerning the items on the list, Walker nonetheless mentioned the seizure of a marijuana pipe. Appellant made no objection to this reference.

■ Appellant correctly notes the general rule that evidence of prior uncharged conduct is inadmissible for the purpose of showing the propensity of a defendant to commit the crime with which he or she is charged. *See State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). However, it also is well settled that evidence of a defendant's contemporaneous possession of other drugs, paraphernalia, weapons, or money is relevant and admissible to show that the defendant knowingly and intentionally possessed the controlled substance underlying the charge, and that the defendant knew of its illegal nature. *See State v. Dennis,* 990 S.W.2d 78, 81 (Mo.App. W.D.1999); *State v. Yahne,* 943 S.W.2d 741, 746 (Mo.App. W.D.1997); *State v. Allen,* 856 S.W.2d 676, 677 (Mo.App. E.D.1993); *State v. Flenoid,* 838 S.W.2d 462, 467–68 (Mo.App. E.D. 1992); *State v. Camden,* 837 S.W.2d 520, 522 (Mo.App. W.D.1992); *State v. Steward,* 844 S.W.2d 31, 34–35 (Mo.App. W.D. 1992); *State v. Johnson,* 811 S.W.2d 411, 415 (Mo.App. E.D.1991). In *Steward,* for example, the defendant, who was convict-

ed of possession of cocaine, complained that evidence was erroneously admitted concerning her possession of prescription painkillers, a drug pipe, several firearms, nearly $1600 in cash, a scale, a cutting agent for cocaine, and packets of paper in a box inside her nightstand. *Steward* at 32–33. In rejecting her claim, the western district of this court held that the listed items "tended to show that a drug selling operation was being run out of [the defendant's] house, making it highly unlikely that [she] was unaware of the presence of the cocaine in her house." *Id.* at 35.

■ The same can be said here. Appellant's possession of marijuana and marijuana-related paraphernalia was legally relevant and admissible to show that he knowingly and intentionally possessed the materials seized from the meth lab, and that he knew of their illicit nature. It cannot, therefore, be said that the trial court abused its discretion in admitting the testimony or exhibit complained of here, much less that he was unduly prejudiced thereby. Appellant's second point is denied.

In Appellant's third point, he assigns error to the trial court for overruling his motion for judgment of acquittal, claiming the evidence was insufficient to support the conviction in that the evidence was seized from shared premises and no evidence was offered to prove Appellant actually manufactured methamphetamine on those premises. The basis of this point relates to the fact that Appellant shared the house in question with his wife and teenage son.

■ In reviewing the sufficiency of the evidence to support conviction, we limit our inquiry to a determination whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt.

*State v. Clay,* 975 S.W.2d 121, 139 (Mo. banc 1998). We view the evidence in the light most favorable to the verdict, together with all reasonable inferences therefrom, and ignore evidence and inferences to the contrary. *State v. Feltrop,* 803 S.W.2d 1, 11 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

■■■■ "The crime of the manufacture of methamphetamine requires the [S]tate to prove the defendant: (1) manufactured methamphetamine and (2) was aware the substance he manufactured was methamphetamine." *State v. Potter,* 72 S.W.3d 307, 311 (Mo.App. S.D.2002); *see* Section 195.211. "If actual possession is not present, as in this case, constructive possession of the drugs or the drug components and apparatus will satisfy this burden if other facts exist which buttress the inference of the defendant's requisite mental state." *State v. Withrow,* 8 S.W.3d 75, 80 (Mo. banc 1999) (citing *State v. Condict,* 952 S.W.2d 784, 786 (Mo.App. S.D.1997)). The supreme court in *Withrow* went on to hold that

> [w]hen the accused shares control over the premises, as here, further evidence is needed to connect him to the manufacturing process. The mere fact that a defendant is present on the premises where the manufacturing process is occurring does not by itself make a submissible case. Moreover, proximity to the contraband alone fails to prove ownership. *There must be some incriminating evidence implying that the defendant knew of the presence of the manufacturing process, and that the materials or the manufacturing process were under his control.*

*Id.* (internal citations omitted, emphasis added).

■■■■ Sufficient evidence was presented in this case to support the reasonable inference that Appellant knowingly manufactured methamphetamine. The evidence showed unequivocally that Appellant shared control of the premises with his wife and was, therefore, in constructive possession of the manufacturing materials found on those premises. "Constructive possession requires, at a minimum, evidence that the defendant had access to and control over the premises where the materials were found." *Withrow* at 80.

■■■■ Moreover, the fact that large amounts of contraband and manufacturing equipment were found throughout the house and commingled with Appellant's personal property constituted "further evidence ... needed to connect [Appellant] to the manufacturing process" and to support the inference that Appellant "knew of the presence of the manufacturing process, and that the materials or the manufacturing process were under his control." *Id.* at 80. Specifically, and setting aside the vast quantity of material seized from the closed closet in the bedroom shared by Appellant and his wife, incriminating evidence was found in plain view in that bedroom, including a book entitled "Secrets of Methamphetamine Manufacture," Priority Mail cardboard book packaging, into which the book fit and bearing the name "D. Charlton" and the addresses of Appellant and Amazon.com, and a green notebook containing chemical formulas used in the manufacture of methamphetamine and phone numbers and references to pagers. Commingled with this evidence in the bedroom were papers bearing the name "Daniel Charlton" and Appellant's checkbook. Items in plain view in the "office" of the house, included a gas mask, methamphetamine paraphernalia, a mirror with razor blades and drinking straws next to it, boxes of the over-the-counter cold

medicine Sudafed, a jar containing liquid and white powder, measuring scales, a spoon, scissors, and several sandwich bags, the corners of which had been cut off. Additionally, the kitchen contained a small Tupperware container in which powdered pseudoephedrine was found. In our view, the foregoing did constitute "some incriminating evidence implying that [Appellant] knew of the presence of the manufacturing process, and that the materials or the manufacturing process were under his control." *Withrow* at 80. The fact that Appellant's wife also shared control over the premises and the seized material does not negate the inference of Appellant's culpability. "A defendant's access to an area where drugs are found is an incriminating fact which is not destroyed by another individual's also having access to the area." *Potter* at 312 (quoting *State v. Metz*, 43 S.W.3d 374, 380 (Mo.App. W.D.2001)). Sufficient evidence was presented to support the jury's inference of Appellant's knowledge of and control, whether joint or exclusive, over the manufacturing operation clearly present in Appellant's home. Point three is denied.[2]

In Appellant's fourth point, he contends the trial court abused its discretion in admitting several incriminating exhibits over his objection because there was no showing that they were directly connected to him, save where they were located. Specifically, Appellant alleges error in admit-

ting State's Exhibits 38, 39, 48, 50, 55, 56, 57, 58, 59, and 60.

We note, initially, that State's Exhibits 39 and 58 never were admitted into evidence as Appellant states in his point, and, therefore, we do not consider any argument pertaining to them. Moreover, Appellant's brief argument under this point is devoted entirely to the law pertaining to authentication of written exhibits when three of the exhibits complained of, State's Exhibits 56, 57, and 59, were not documentary in nature. "Arguments raised in the points relied on that are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 124 (Mo.App. W.D.2001) (citing *Luft v. Schoenhoff*, 935 S.W.2d 685, 687 (Mo.App. E.D.1996)). Therefore, the portion of the point alleging error in admitting State's Exhibits 56, 57, and 59 is not addressed herein.

This leaves to be considered State's Exhibits 38, 48, 50, 55, and 60, which were admitted. Respectively, these exhibits were: (1) "Secrets of Methamphetamine Manufacture," (2) a monthly planner, (3) seven pages from that planner which contained a "recipe" for manufacturing methamphetamine, a list of companies that manufacture matches, and a list of chemistry books, (4) a green notebook containing chemical formulas, phone numbers, and pager numbers, and (5) the Priority Mail

---

2. Inexplicably, no fingerprint analysis was done on any of the materials seized from Appellant's home, and no handwriting analysis was performed on the green notebook or any other written material to establish Appellant's connection to the manufacturing process. No inquiry was made into which "D. Charlton" ordered the methamphetamine "cookbook" from Amazon.com. All the evidence was seized from areas apparently under the joint control of Appellant and his wife, Diane Charlton, who was the only one of the two who was arrested with drug contraband on her person. Mindful, however, of the applicable standard of review, we decline to independently weigh the evidence or consider possible inferences to be made from the evidence (or lack thereof) that may contradict the verdict. "If [a] ruling is plausible, in light of the record viewed in its entirety, we will not reverse, even if we would have weighed the evidence differently." *State v. Lanos*, 14 S.W.3d 90, 93 (Mo.App. E.D.1999).

package accompanying the aforementioned book and bearing the name "D. Charlton" and Appellant's address.

Appellant's argument is bottomed on a citation to one case, *Cummins v. Dixon*, 265 S.W.2d 386 (Mo.1954), where our supreme court noted that "[a]s a general rule, the execution or authenticity of a private writing must be established before it may be admitted into evidence." *Id.* at 394–95 (quoting 32 C.J.S., *Evidence*, §§ 733, 741). Appellant argues on the basis of this principle that it was error to admit the exhibits because there was no evidence indicating who wrote the book or documents, or who ordered the book. He surmises that "[c]ertainly, the alleged recipes and chemical questions [sic] were to indicate that the person who wrote them was manufacturing methamphetamine, that could have been their only purpose." If Appellant means to argue that the exhibits' only plausible relevance hinges on their origin or authorship, this is clearly incorrect. As the State argues, the exhibits' "presence in areas that [Appellant] had access to, i.e.[,] in [Appellant's] bedroom and the office in his house, was evidence that showed that [Appellant] constructively possessed the methamphetamine lab." *See Dennis* at 81; *Yahne* at 745–46; *Allen* at 677; *Flenoid* at 467–68; *Camden* at 522; *Steward* at 34–35; *Johnson* at 415.

 The authorship of the materials in question is immaterial to show that Appellant was aware of the meth lab in his bedroom closet and in the office room of his house; their presence where they were located serves to prove that fact. Appellant does not dispute the testimony of the officers who conducted the search that the items in question were the same items seized from Appellant's home. We therefore find no abuse of the trial court's discretion in admitting the exhibits in question. Appellant's fourth point is denied.

In Appellant's fifth point, he alleges the trial court abused its discretion by admitting into evidence the testimony of Matthew Barb ("Barb") of the Missouri State Highway Patrol concerning a lab report and the qualifications of Jeremiah Morris ("Morris") because both the report and Barb's testimony were hearsay and admitting them deprived Appellant of his Sixth Amendment right to confrontation. Appellant claims that evidence he presented concerning the faulty operation of an instrument used to prepare the report in question prevented the report from being covered by the so-called "business record" exception to the hearsay rule.

Prior to the presentation of the State's case in chief, Appellant filed a motion in limine seeking to exclude the testimony of Barb concerning the lab report completed by Morris. At a hearing on Appellant's motion, he presented the testimony of an expert witness who stated that after reviewing the notes prepared by Morris in the course of completing the lab test, the witness was concerned that the machine used to perform the test was not functioning properly at the time the test was performed. The witness based his qualms on the presence of "squiggly lines" created on a printout during a "blank run" of the machine. The trial court took Appellant's motion with the case and, upon renewal of the motion prior to Barb's testimony, the motion was denied on the basis of the admissibility of Barb's testimony under the business records exception to the hearsay rule.

Barb's testimony included a recital of his and Morris's qualifications to perform the test at issue. He testified he was acquainted with Morris, had reviewed his notes taken during the test, and that such reports were routinely prepared by the Missouri State Highway Patrol in the ordinary course of business during such testing.

He testified as to the results of the test at issue, and discounted the "squiggly lines" referenced by Appellant's expert witness as instrument "noise" and "column bleeding" that did not affect the accuracy or validity of the test results.

The business records exception to the hearsay rule is codified in Missouri as follows:

> A record of an act, condition, or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Section 490.680. Appellant concedes that Missouri courts have approved the application of this business records exception to lab results similar to the one at issue here. *See State v. Rhone*, 555 S.W.2d 839, 841–42 (Mo. banc 1977); *State v. Hall*, 750 S.W.2d 637, 638–39 (Mo.App. E.D.1988).

Appellant argues, however, that the required "showing that the record was accurate" is missing in this case. As a basis for this argument, Appellant cites us only to the testimony of his expert witness regarding the "squiggly lines" observed during the "blank run" of the testing machine. Appellant ignores, however, the contradictory testimony of Barb, who dismissed the "squiggly lines" as instrument "noise" and "column bleeding" that did not affect the accuracy or validity of the test results. Section 490.680 clearly states that the determination whether "the sources of information, method and time of prepara-

tion were such as to justify its admission" is to be made by the trial court. Even the sole authority cited by Appellant in support of this point states that "[t]his provision of [Section 490.680] vests in the trial court a considerable discretion in passing upon the admissibility of the document." *Thomas v. Fred Weber Contractor, Inc.*, 498 S.W.2d 811, 813 (Mo.App.St.L.Dist. 1973). That the trial court was persuaded by the testimony of Barb and chose to discount the concerns of Appellant's expert witness does not by itself constitute an abuse of the trial court's broad discretion, but instead a valid exercise of it. We are unable to discern a misapplication of the provisions of Section 490.680 here. Appellant's fifth point is denied.

In Appellant's sixth and final point he contends that "[t]he trial court erred and abused its discretion in admitting into evidence State's Exhibits 44, 45, 46 and 47 for the reason that there was no showing of a chain of custody." This point fails to comply with Rule 84.04,[3] as incorporated into the rules of criminal procedure by Rule 30.06(c). Specifically, the point relied on fails to "explain in summary fashion why, in the context of the case, [the] legal reasons [cited for assigning error] support the claim of reversible error." Rule 84.04(d)(1)(C). Even granting that a claim that "there was no showing of a chain of custody" suffices as a statement of the legal reason for assigning error, Appellant's point makes no effort to explain how the facts of this case support Appellant's allegation. Moreover, were we to disregard, *ex gratia*, the mandate of this rule, we would be forced here to address an argument in support of this point which contains but two citations to legal authority for the unremarkable proposition that admission of an exhibit requires "reason-

---

**3.** References to rules are to Missouri Rules of Civil Procedure and Missouri Rules of Criminal Procedure (2003) unless otherwise indicated.

able assurance that [the object] was the same and in the same condition" as when it was seized. *State v. Smith,* 222 S.W. 455, 458 (Mo.1920); *See also State v. Rose,* 428 S.W.2d 737, 740 (Mo.1968). In any event, there being no application to the facts here of the legal basis for assigning error to the trial court set out in Appellant's point, we decline to exercise plain error review.

The judgment of the trial court is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.