STATE of Missouri, Plaintiff–Respondent,

v.

Bryan H. GILBERT, Defendant–Appellant.

No. 24875.

Missouri Court of Appeals, Southern District, Division One.

Dec. 16, 2003.

Ellen H. Flottman, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Eaton, Asst. Atty. Gen., Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Bryan H. Gilbert ("Defendant") was convicted by a jury of voluntary manslaugh-

ter, a violation of Section 565.023,[1] in connection with the death of Manat Patan ("Victim"). Pursuant to the jury's recommendation, the trial court sentenced Defendant to fifteen years imprisonment. Defendant raises one point on appeal, in which he alleges that the trial court abused its discretion by not allowing him to cross-examine a witness for the State concerning his alleged bias or prejudice. We affirm the judgment.

Defendant does not contest the sufficiency of the evidence to support the verdict. Viewed in the light most favorable to the judgment, the evidence revealed the following: In October 1998, Defendant and his girlfriend, Misty Rae Gilbert ("Gilbert"), lived in the Budget Apartments in Rolla, Missouri, where one of their neighbors was Victim. On the evening of October 27, 1998, Defendant was watching television with Gilbert and his infant niece, Taylor. When Gilbert and Taylor went to bed, Defendant left the apartment for a snack at a local coffee shop. When he returned, he discovered Victim standing over the bed where Gilbert and Taylor were sleeping. Defendant grabbed Victim from behind and, in the course of a brief struggle, choked Victim to death with a belt.

Defendant woke Gilbert and told her he thought he had killed Victim, then placed Victim's body in the bathtub to avoid exposing Gilbert and Taylor to it. He then left the apartment to borrow a friend's pickup truck to dispose of the body. When he returned with the truck, Gilbert and Taylor were no longer present. Defendant wrapped Victim's body in a sheet, placed it in the bed of the truck, and drove to a local creek known as Mill Creek, where he dumped the body after taking Victim's wallet, watch, and shoes to hinder identification. Defendant disposed of Vic-

tim's watch in a local river that night, and burned his other personal effects and the sheet the following day in an effort to conceal his actions.

The next day, the Rolla Police Department began investigating a report of Victim's disappearance, questioning Defendant in the process. Defendant did not tell the police what he had done. However, Defendant did tell his friends, Jeffrey Garbacz ("Garbacz") and Jason Jones, about killing Victim. He told Garbacz he had done something "pretty bad," but when Defendant told him that he had killed somebody Garbacz told him he did not want to hear the details.

On November 27, 1998, Victim's body was found floating in Mill Creek and the Missouri State Highway Patrol ("the Patrol") initiated a homicide investigation. A criminal investigator with the Patrol questioned Defendant about Victim's disappearance, and Defendant again lied about his knowledge of what happened to Victim.

A few weeks later, Defendant told Garbacz that Victim's body had been discovered, which convinced Garbacz that Defendant had told the truth about killing him. Garbacz testified at trial that he did not want the knowledge of Victim's death on his conscience, or to suffer the legal consequences of helping to conceal such a crime. He decided to talk with Defendant for the purpose of recording his confession.

Garbacz subsequently initiated a conversation with Defendant concerning Victim's death, during which Defendant told Garbacz the details of his crime, which Garbacz recorded on an audio tape. The following day Garbacz delivered the taped confession to the public defender's office in Phelps County, Missouri. Later that day, the Phelps County Sheriff's Department

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

and the Patrol detained Defendant and Gilbert for questioning. Although he initially denied involvement, Defendant later provided a detailed confession concerning how he killed Victim and disposed of the body, which was recorded with Defendant's consent. He was then arrested and charged with second-degree murder. Following trial he was convicted of the lessor offense of voluntary manslaughter and sentenced as indicated above. This appeal followed.

Defendant charges in his sole point on appeal that the trial court abused its discretion in sustaining the State's objection to his cross-examination of Garbacz about whether charges for passing bad checks were pending against Garbacz at the time he made the tape recording of Defendant's confession. Defendant argues that his rights to due process and confrontation were violated in that Garbacz' testimony was a "critical" piece of evidence against him, and that Garbacz' credibility was at issue. He states that he "needed to be able to explore [Garbacz'] bias and prejudice, including his motivation to testify falsely in order to obtain a benefit from the State on his own charges."

The trial court has broad discretion in the admission or exclusion of evidence, and we will not disturb the trial court's ruling on such matters absent an abuse of discretion. *State v. Charlton*, 114 S.W.3d 378, 382 (Mo.App. S.D.2003). We review for prejudice and not mere error, and will affirm the trial court's ruling unless it was so prejudicial as to deprive the appellant of a fair trial. *Id.*

At trial, the cross-examination of Garbacz by Defendant's counsel included the following exchange:

Q. Now I want to talk about the tape. You then took it—I believe you said you took the tape to an attorney at the Public Defender's office—is that correct?

A: Yes—the next day.

. . . .

Q: And you knew him prior to just walking in. He was your attorney—correct?

A: No—at that point, he wasn't my attorney.

Q: Wasn't your attorney yet, but you had criminal charges pending in Phelps County.

[Prosecutor]: Objection, Your Honor. It's irrelevant and immaterial. It's improper cross.

At that point, the following occurred out of the hearing of the jury:

[Defendant's Counsel]: Judge, I think it's relevant and material for passing bad checks because this witness had criminal charges pending at the time. He had a lawyer at the Public Defender's office. He surreptitiously taped my client and he was the one who could choose what was on the tape and what wasn't on the tape—what questions were asked and what weren't asked.

The Court: Was he charged with this crime?

[Defendant's Counsel]: He was charged with this crime at the time he does this—yes.

[Prosecutor]: He was charged with what crime?

[Defendant's Counsel]: Passing bad checks.

The Court: Oh, you said this crime. I asked you about this case. What does that have to do with this case? Was he convicted?

[Defendant's Counsel]: Judge, no, he was not convicted, but it goes to motive to lie and that's never . . .

The Court: Well, what could be the motive?

[Defendant's Counsel]: Well, motive and bias to present this tape—to tape record this in a way that he could pick and choose what questions he ask [sic] [Defendant] and when he's going to turn it off, instead of allowing [Defendant] to say more information. In other words, he had control over the tape recording.

The Court: The objection is overruled. Excuse me—the objection is sustained.

Defendant's point on appeal is directed at his inability to interrogate Garbacz about whether he had charges pending at the time he made the tape recording, and consequently his inability to explore Garbacz' bias and prejudice including his motivation to testify falsely in order to obtain a benefit from the State concerning his own charges. Defendant relies primarily on *State v. Joiner*, 823 S.W.2d 50 (Mo.App. E.D.1991). *Joiner*, however, is distinguishable from this case. There, the defendant complained that the trial court unconstitutionally denied him leave to cross-examine a witness concerning two pending felony charges against the witness. Charges were, in fact, pending against the witness at the time of trial, and were being prosecuted by the same prosecutor who tried the defendant's case. The *Joiner* court agreed with the defendant and reversed his conviction. In doing so it noted that "a defendant in a criminal prosecution has a constitutional right to cross-examine [a] witness, for the purpose of showing possible motive or self-interest on actual or threatened criminal charges presently pending by efforts of the same prosecutor," and that "[u]nder such circumstances there is an existing, possible motivation to testify favorably for the prosecutor even if no deal is pending or likely." *Id.* at 53. The court also noted that, in that case, the witness was the sole eye-witness and provided the State's only proof of guilt in the case. *Id.* at 54.

In the instant case, the charges against Garbacz referred to by Defendant had been disposed of prior to Defendant's trial. We are directed to nothing in the record indicating that the disposition of those charges was affected in any way by, or had any connection with, the actions of Garbacz in recording his conversation with Defendant or testifying at trial. In other words, there is no indication that Garbacz benefited in the disposition of the charges against him because of the tape recording, or because of any anticipated testimony in this case. Nor was there any reason for him to fear harsher treatment by the State if he did not testify to the State's satisfaction.

Defendant points out that *Joiner* holds that the admissibility of evidence of the witness' status regarding pending charges against him, brought by the same prosecutor, does not depend upon an existing deal or upon evidence of the witness' actual expectancy of leniency.

Indeed the *Joiner* court stated that:

a defendant in a criminal prosecution has a constitutional right to cross-examine the witness, for the purpose of showing possible motive or self-interest on actual or threatened criminal charges presently pending by efforts of the same prosecutor. Under such circumstances there is an existing, possible motivation to testify favorably for the prosecutor even if no deal is pending or likely. It is sufficient if the witness might perceive a possible benefit. (internal citations omitted).

*Id.* at 53. Here, however, there is no evidence that Garbacz could have perceived a possible benefit by testifying in this case as he did. While the *Joiner* court held that in showing bias, it is not necessary to prove the existence of a deal or the state's willingness or unwillingness to deal, it said "[w]hat is relevant is the

witness' knowledge of these facts, his perception of expectancy of favorable treatment if he furthers the state's case, or his basis to fear harsh treatment if his testimony is unfriendly." *Id.* at 54. The lack of any evidence that Garbacz had a basis for expecting favorable treatment from the State following his testimony undermines Defendant's theory that the disallowed examination would have gone to Garbacz' "motivation to testify falsely in order to obtain a benefit from the State on his own charges."

The *Joiner* court itself distinguished that case from *State v. Smith*, 741 S.W.2d 778 (Mo.App. E.D.1987), where the defense had been precluded from cross-examining a witness about the prior disposition of charges against her son. The *Joiner* court said, concerning *Smith*, that "it appears the son's case was no longer pending at the time of Smith's trial. Thus, evidence relevant to proving bias of this witness would have to be in relation to a deal in the past. There can be no hope of favorable treatment in a case previously disposed of." *Joiner* at 53.

■ Moreover, we note that Defendant argues here that Garbacz' decision to tape their conversation was made while charges were pending against Garbacz, and that the jury needed to know that information to evaluate Garbacz' credibility. He says it was relevant to whether he was seeking to curry favor for himself. At trial, however, Defendant's argument to the court was that revealing to the jury the existence of charges against Garbacz was necessary to show his motive and bias in the manner in which he operated the tape machine, i.e. he could pick and choose what questions to ask and when to turn the recorder off. Therefore, the issue raised on appeal is different than the position presented to the trial court. A party is not permitted to rely on a theory different from the one offered at trial. *State v. Leivan*, 103 S.W.3d 425, 429 (Mo.App. S.D. 2003).

■ Finally, even if the trial court's ruling on the objection were erroneous, Defendant has failed to show how it was prejudicial, as required. *See Charlton* at 383. Error in the admission or exclusion of evidence is not considered prejudicial where similar evidence is properly admitted elsewhere in the case or has otherwise come into evidence without objection. *State v. Ponder*, 950 S.W.2d 900, 910 (Mo. App. S.D.1997). Defendant's confession was not limited to the Garbacz recording, but was also recorded at the Phelps County Sheriff's Department. This more detailed confession, which corroborated Defendant's confession to Garbacz, was also submitted to the jury. Regardless, therefore, of Garbacz motive in recording Defendant's statements, or his possible bias, the resulting confession was cumulative of the recorded confession made at the sheriff's department. Unlike in *Joiner*, the testimony of Garbacz and his recording were not the only proof of guilt.

For the reasons stated above, the judgment is affirmed.