STATE of Missouri, Respondent,

v.

Debra SWIGERT, Appellant.

No. WD 46009.

Missouri Court of Appeals,
Western District.

April 6, 1993.

Raymond L. Legg, Office of the Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

FENNER, Judge.

Appellant, Debra Swigert, appeals her conviction in the Circuit Court of Pettis County[1] of forcible rape, section 566.030, RSMo Supp.1992, and abuse of a child, section 568.060, RSMo Supp.1992.[2] On January 15, 1992, a jury found appellant guilty of both charges and appellant was sentenced to eight years imprisonment on the charge of forcible rape and three years imprisonment on the charge of abuse of a child, said terms to run consecutively.

The facts adduced at trial include the following: In November of 1990, a group of children, all under the age of seventeen, went to appellant's apartment in Liberty, Missouri. Among these children was Stacy Sidwell who was fourteen years of age at the time of the incident in question. Both appellant and her boyfriend, Tim Choate, who was also at appellant's apartment, were over the age of seventeen. Appellant and Choate provided beer for everyone to drink at appellant's apartment.

---

1. Appellant was originally charged in the Circuit Court of Clay County, but was granted a change of venue to the Circuit Court of Pettis County.

2. All statutory references are to RSMo Supp. 1992, unless otherwise noted.

The record reflects that appellant and Choate left to buy more beer and, upon returning to appellant's apartment, they went with Stacy to appellant's bedroom. Stacy helped appellant and Choate move a dresser in front of the bedroom door apparently so that no one could come in. Appellant encouraged Stacy to consume a lot of alcohol in the bedroom. They got drunk in the bedroom and appellant asked Stacy about doing a "threesome." Then appellant and Stacy started dancing to the radio. Appellant helped Stacy undress and undressed herself as well. Stacy testified that Choate had been in the bathroom during this time, but then came out of the bathroom naked after Stacy and appellant had undressed. Appellant told Choate to go back into the bathroom. While Choate was back in the bathroom, appellant kept suggesting a "threesome" to Stacy, but Stacy said no. When Choate came out of the bathroom a second time, he started dancing with Stacy, but Stacy pushed him away. The three of them ended up on the bed. According to Stacy's testimony, appellant and Choate both performed oral sex on her. Then Choate had sexual intercourse with Stacy as appellant rubbed Stacy's chest. After having sex with Choate, Stacy joined the others in the living room and spent the night at appellant's apartment.

In December, 1990, Heather Hooper, Stacy's stepsister, and Monica Abatto, both under the age of seventeen, went to appellant's apartment. The record indicates that numerous photographs were taken of Heather and Monica, either by appellant or Monica, at appellant's apartment. The photographs showed Heather and Monica wearing negligee or partially undressed and in various suggestive poses.

According to the record, some of the photographs taken at appellant's apartment were found and seized during the course of a search of Tommy Elliott's, appellant's brother, prison cell. Appellant testified that Heather and Monica had corresponded with Elliott on a couple of occasions. She further admitted that she had sent some of the photographs to her brother.

The State introduced two letters purportedly written by Elliott, one of which was sent to appellant and the other of which was sent to Heather. In these letters, written after the photographs were sent to Elliott, Elliott asked for additional photographs of this type. Appellant's testimony at trial revealed that Elliott's letter to appellant stated, in part, "I want a picture of Heather standing with just a half shirt and panties. Any teddies?" The court received both letters into evidence over appellant's objections.

In her first point on appeal, appellant argues that the trial court abused its discretion when it unduly injected itself by improperly questioning State's witness, Heather Hooper, in violation of appellant's rights to due process of law and a fair trial. Specifically, appellant argues that Heather was a State's witness who was willing and cooperative, the State was represented by competent and experienced counsel, the questioning established points favorable to the government, and the questioning placed an undue burden on appellant when the trial court assumed the role of an advocate in that there was no need to clarify any ambiguous or obscure testimony by the witness.

■ Appellant, recognizing that this point has not been preserved for appellate review, requests plain error review pursuant to Rule 30.20. Appellant contends that the trial court's questioning impaired the atmosphere of neutrality and, thus, manifest injustice and a miscarriage of justice occurred. *State v. Sandles*, 740 S.W.2d 169, 177 (Mo. banc 1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1303, 99 L.Ed.2d 513 (1988). Under the plain error rule, this court will set aside the trial court's ruling only when it affects the rights of the accused to the extent of manifest injustice or miscarriage of justice if left uncorrected. *Id.*

■ The standard for examining the alleged prejudicial conduct of the trial judge is whether the trial court's conduct is such as to prejudice the minds of the jury against the defendant, thereby depriving

the defendant of a fair and impartial trial. *State v. Thomas*, 791 S.W.2d 861, 862 (Mo. App.1990). There is no error as long as the trial judge does not express an opinion as to the nature, content or truthfulness of evidence. *Id.* at 863.

▆▆▆ The trial judge's duty is to maintain a position of absolute neutrality and an impartial attitude in his conduct and demeanor. *State v. Clay*, 763 S.W.2d 265, 268 (Mo.App.1988). However, in fulfilling this duty, the court can ask questions which seek to develop the truth more fully and to clarify testimony already given. *State v. Roddy*, 604 S.W.2d 32, 33 (Mo.App. 1980). As the court stated in *Ray v. United States*, 367 F.2d 258, 261 (8th Cir.1966), *cert. denied*, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785 (1967):

> One of the chief roles of the trial judge is to see that there is no misunderstanding of a witness's testimony. The judge has a duty to comprehend what a witness says as much as it is his duty to see that the witness communicates with the jury in an intelligible manner. A trial judge can do this in a fair and unbiased way. His attempt to do so should not be a basis of error. Where the testimony is confusing or not altogether clear the alleged "jeopardy" to one side caused by the clarification of a witness's statement is certainly outweighed by the desirability of factual understanding.

In other words, the trial judge must ensure that the evidence is clear and understood, but must not unfairly emphasize the evidence, *i.e.*, by expressing an opinion on it or by commenting directly on it. *Id.* 367 F.2d at 262.

▆▆▆ The alleged improper conduct by the trial court occurred during the State's examination of its witness, Heather Hooper, who was called to identify the photographs taken at appellant's apartment, as described above. The photographs, marked as State's Exhibits 5 through 43, were all received into evidence. Appellant contends that when the State reached Exhibit 14, the court began engaging in its own direct examination of the witness for the purpose of having the witness identify herself in

the photographs. Appellant further argues that while the trial court's questioning up to Exhibit 14 was merely to clarify the witness' testimony, as shown by the trial court's asking the jury if they were able to hear everything, the remaining questions, *i.e.*, concerning Exhibits 14 through 43, were not for that purpose but rather were for the purpose of having Heather identify herself in the photographs. Appellant contended that this latter purpose was improper and the questioning an abuse of discretion because the judge was assisting the State and exhibiting "a prosecutor's zeal" to the prejudice of Swigert.

According to the transcript, the exchange which took place is, in pertinent part, as follows:

Q [prosecutor]: Is State's Exhibit # 12 taken in the same time frame as all the other photos that you've identified thus far?

A [Heather Hooper]: Yes.

Q: State's Exhibit 13?

A: It's me.

THE COURT: You?

A: Me.

Q: And where was State's Exhibit 13 taken?

A: Debbie's apartment.

Q: Do you know who took 13?

A: I'm not sure.

Q: Between who?

A: Monica and Debbie.

THE COURT: Are you hearing all right?

(Jurors nod in the affirmative.)

THE COURT: Okay. If you don't raise your hands, I'll assume so.

Q: State's Exhibit 14?

A: Debbie and Monica.

Q: Do you know who took that picture?

A: Me.

THE COURT: May I that's Monica and?

A: And Debbie.

* * * * * *

Q: Where was State's Exhibit 16 taken?

A: Debbie's apartment.

Q: Do you know who took that picture?

A: Debbie.

THE COURT: Mr. Prosecutor, which one is which in that picture? The girl in front is which one?

A: That's me, that's Monica in front.

THE COURT: Witness is one in the rear?

[State]: Yes.

THE COURT: Thank you.

\* \* \* \* \* \*

Q: State's Exhibit 18?

A: Monica and me.

THE COURT: Which one is which?

A: Monica in front, I'm in back.

\* \* \* \* \* \*

Q: State's Exhibit 20?

A: Me and Monica.

THE COURT: Which one is you?

A: That's me.

\* \* \* \* \* \*

Q: State's Exhibit 27?

A: Monica and me.

Q: Are you the person on the right?

A: Yes.

THE COURT: Are you the one with the white blouse?

A: Yes.

\* \* \* \* \* \*

Q: Who took State's Exhibit 28?

A: Debbie.

THE COURT: Are you again the one with the white blouse?

A: Yes.

\* \* \* \* \* \*

Q: Who took State's Exhibit 30?

A: Debbie.

THE COURT: Were you the one in the white?

A: Black.

THE COURT: You're the one in the black. Thank you.

\* \* \* \* \* \*

Q: Who took State's Exhibit 31?

A: Debbie.

THE COURT: Are you the one with the short pants?

A: Yes.

THE COURT: So you are on the left?

A: Yes.

\* \* \* \* \* \*

Q: Where was State's Exhibit 35 taken?

A: Debbie's apartment.

THE COURT: Did she say that was her?

[State]: Yes.

\* \* \* \* \* \*

Q: State's Exhibit 42?

A: Debbie, Monica, and me.

Q: Do you know where that was taken?

A: Debbie's apartment.

Q: Do you

THE COURT: Who's on the left in the white?

A: I'm on the left and Monica is on the right.

THE COURT: Thank you.

\* \* \* \* \* \*

Q: Who took 43?

A: Debbie.

THE COURT: The one with the shorter jeans is you?

A: Yes.

This exchange between the trial court and the witness, Heather Hooper, was not unduly prejudicial to appellant. The court was not assuming the role of an advocate nor was it demonstrating an attitude of bias or hostility; the court was merely attempting to clarify who was who in the photographs and, specifically, where the witness was in the photographs. The trial court's questioning cannot be said to have unfairly emphasized the testimony. The trial judge did not express an opinion about the photographs nor did he comment directly on the witness's testimony. Thus, the trial court's conduct did not deprive appellant of a fair trial.

We find no error, plain or otherwise.

Appellant's first point is denied.

In her second point on appeal, appellant argues that the trial court erred in admitting into evidence, over appellant's objection, letters purportedly written by Tommy Elliott because the State failed to establish

a sufficient foundation for their admission by not offering evidence to authenticate the letters, and the letters were inadmissible hearsay used to prove the element of sexual gratification on the charge of abuse of a child.

■ The trial judge is given wide latitude in ruling on whether to admit or exclude evidence, and absent a clear abuse of discretion, the appellate court will not interfere with that ruling. *State v. Reed*, 816 S.W.2d 919, 923 (Mo.App.1991). It is only when the trial court's ruling on admissibility of evidence clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable that the appellate court will find an abuse of discretion. *State v. Jack*, 813 S.W.2d 57, 60 (Mo.App. 1991).

■ The general rule is that the execution or authenticity of a private writing must be established before it may be received into evidence. *State v. Davis*, No. 44132, 849 S.W.2d 34 at 41 (1993) (citing *Cummins v. Dixon*, 265 S.W.2d 386, 394 (Mo.1954)). The authenticity of a document cannot be assumed, but what it purports to be must be established by proof. *Id.* (citing *Heutel v. Stumpf*, 783 S.W.2d 421, 422 (Mo.App.1989)). It is not sufficient, for purposes of establishing authenticity, that the letter purports to have been written and signed by the person to whom it is attributed. *Id.*

However, an exception to this rule, the "reply letter doctrine," provides that letters received in reply to other letters proved to have been sent to the party are admissible. *Id.* This exception rests upon the presumption that "letters are delivered to the person to whom addressed, and that the reply was written by him or by his authority." *Id.* 849 S.W.2d at 41 (quoting *Crawford v. Metropolitan Life Ins. Co.*, 167 S.W.2d 915, 923 (Mo.App.1943)).

■ Another situation allowing for the admission of the letters over appellant's objection is where the appellant confirms the authenticity of the letters by her own testimony. *See State v. Holland*, 781 S.W.2d 808 (Mo.App.1989) (stating that reversible error cannot be predicated upon admission of evidence which defendant later confirms by his own testimony). Thus, appellant could concede the authenticity of the letters and, thus, "reach[ ] back and wipe[ ] the purported basis of [her objection to the letters] clean of any prejudice." *State v. McMillan*, 593 S.W.2d 629, 633 (Mo.App.1980).

■ In the case at bar, the letters, Exhibits 44 and 45, were found in the possession of their intended recipients, Heather and appellant, respectively. Both Heather and appellant testified that they had previously written to Elliott. Specifically, Heather testified that she wrote to Elliott twice and that he responded to both of her letters several times. Appellant testified that Exhibit 45 was the letter that Elliott had written to her requesting more photographs and was in response to appellant's previous correspondence to Elliott in which she sent Elliott the photographs. Furthermore, appellant conceded at trial that her brother, Elliott, had written to Heather, as is evidenced by the following colloquy:

Q [Mr. Klopfenstein]: Well, didn't—now Tommy wrote Heather Hooper, right?

A [appellant]: Right.

Q: And you were aware of that?

A: Yes.

Q: He even asked her if she would pose in her panties and bra?

A: You can't get me for what they send in letters. I don't—

THE COURT: You just answer the questions.

WITNESS: Okay.

Q: Do you recall him writing her and asking her if she couldn't pose in her panties and bra?

A: I didn't read the letters.

■ The evidence is sufficient to prove the authenticity of the letters under the "reply letter doctrine." However, even if authenticity had not been sufficiently established under the "reply letter doctrine," appellant conceded at trial that the two letters in question, Exhibits 44 and 45, had

been written by Elliott to Heather and appellant, respectively. By conceding their authenticity, appellant "wiped the purported basis of [her objection] clean of any prejudice." Any error would have been cured by appellant's own testimony at trial.

Appellant further argues, however, that even if the letters were properly authenticated, they should have been excluded as inadmissible hearsay. Appellant contends that the letters were used to prove sexual gratification, an essential element of abuse of a child under section 568.060.2.

Section 568.060.1(2) provides that a person commits the crime of abuse of a child if he photographs a child less than eighteen years old engaging in a prohibited sexual act or in the simulation of such an act. As defined in section 568.060.2, "prohibited sexual act" means any sexual activity or nudity if such nudity is to be depicted for the purpose of sexual stimulation or gratification of any individual who may view such depiction.

■ The hearsay rule excludes out-of-court statements from being introduced to prove the truth of the matters asserted therein. *State v. Dentman,* 634 S.W.2d 540, 541 (Mo.App.1982). The admission of objectionable hearsay evidence will not constitute reversible error where the defendant testifies at trial to the facts sought to be proved by the hearsay evidence. *State v. Manning,* 682 S.W.2d 127, 131 (Mo.App. 1984).

■ In the case at bar, appellant identified the photos and admitted that she sent them to her brother, Tommy Elliott. She also admitted, on cross-examination, that Elliott requested more pictures of the same nature. Furthermore, appellant testified as follows:

Q [prosecutor]: Isn't it true that you were providing your brother pictures of young girls—

A [appellant]: No.

Q: —so that he could enjoy them?

A: Just that one time. That was a mistake.

Q: But he wrote and asked you for some more, didn't he?

A: But I didn't send no more. I—

The above colloquy indicates that appellant provided the pictures to Elliott for his enjoyment or gratification.

Even if the letters were found to be objectionable hearsay evidence, a question that we need not address, their admission did not constitute reversible error because appellant testified to the facts sought to be proved by the letters. Thus, appellant was not prejudiced by the admission of the letters, and the trial court did not abuse its discretion in allowing in this evidence.

Appellant's second point is denied.

In her third point on appeal, appellant argues that she was denied her constitutional right to effective assistance of counsel because defense counsel failed to request that the trial court instruct the jury on the defense of alibi and ignored appellant's alibi evidence in her closing argument, concentrating instead on the inconsistencies in the testimony of Stacy Sidwell.

■ According to Rule 29.15(a), a person convicted of a felony who claims that her conviction violates her constitutional rights may seek relief in the sentencing court pursuant to the provisions of Rule 29.15. Rule 29.15(a) further states, "[t]his Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated."

Rule 29.15(b) states, in pertinent part:
A person seeking relief pursuant to this Rule 29.15 shall file a motion to vacate, set aside or correct the judgment or sentence substantially in the form of Criminal Procedure Form 40. If an appeal of the judgment sought to be vacated, set aside or corrected was taken, the motion shall be filed within thirty days after the filing of the transcript in the appeal pursuant to Rule 30.04. If no appeal of such judgment was taken, the motion shall be filed within ninety days of the date the person is delivered to the custody of the department of corrections.... *Failure to file a motion within the time provided by this Rule 29.15 shall constitute a complete waiver of any right to proceed under this Rule 29.15 (emphasis added).*

The Missouri Supreme Court in *State v. Wheat,* 775 S.W.2d 155 (Mo. banc 1989),

*cert. denied,* 493 U.S. 1030, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990), discussed the precise issue presented to us here. Appellant in *Wheat,* conceding that he had failed to file a motion to vacate in the trial court under Rule 29.15, sought review of his claim for ineffective assistance of counsel by way of direct appeal. *Id.* at 157. The court rejected appellant's argument and stated:

> Under the explicit language of [Rule 29.-15], the scheme fashioned there provides the *"exclusive procedure"* by which a person may seek relief in the sentencing court, and ... failure to file such motion constitutes a complete waiver of the right. Not only are defendants given clear notice of these procedures by the rule, but here defendant was personally cautioned by the trial judge as to the consequences if he failed to preserve his right. From this it necessarily follows that claims for relief cognizable under the rule may not be considered when presented for the first time on appeal; this proposition flows from the plain language of Rule 29.15.

*Id.* at 157–58 (emphasis in original).

Appellant concedes that a Rule 29.15 postconviction relief motion was not filed challenging her conviction in the instant case. Furthermore, the record reflects that the trial judge clearly informed appellant of her right to proceed under Rule 29.15 and also informed her of the time limitations under Rule 29.15, stating, "[i]f you let that time run, even if you've got a valid claim, no court will ever listen to them [sic]." Despite the trial judge's words of caution, appellant failed to file a motion under Rule 29.15 and, thus, failed to seek relief in a proper manner. Thus, under the provisions of Rule 29.15, appellant has completely waived her right to proceed on her ineffective assistance of counsel claim.

Judgment affirmed.

All concur.