Philip M. Hess, Presiding Judge *895 Introduction
Denise J. Hein ("Appellant") appeals the judgment convicting her of second-degree murder and armed criminal action arising out of the shooting and death of Gary Baranyai ("Victim"). Appellant was sentenced to concurrent terms of life imprisonment and ten years, respectively. In Appellant's sole point, she contends the trial court abused its discretion in admitting a letter purportedly written by Victim to Appellant into evidence. Specifically, Appellant argues the trial court erred because the letter was not authenticated. We affirm because Appellant was not prejudiced by the admission of this evidence.
Factual and Procedural Background
Victim was married to Appellant's twin sister, Donna Hein ("Victim's Wife"). Appellant and Victim had a good relationship for many years, but the relationship deteriorated over time based upon Appellant's suspicions that Victim was beating his wife.
On June 29, 2014, Appellant called 911 and told the operator she had shot someone at 8008 Pembroke Drive. Shortly thereafter, two police officers arrived. Appellant was at the door of the residence, and, as she exited, she told the police she shot Victim. Victim had been shot multiple times, and he passed away because of a gunshot wound to the chest. The police took Appellant to the station for questioning.
Appellant was Mirandized at the station, and she told the police she was at 8008 Pembroke to pick up a watch she left there.[1] Appellant informed the police she thought she could avoid Victim by coming to the house later in the morning, but Victim arrived while Appellant was inside the home. Appellant explained her relationship with Victim had become strained in recent years, and, on the day of the shooting, Victim allegedly sounded angry and threated Appellant. Appellant said she was scared of Victim. She thought Victim was abusing his wife. The police searched Appellant's residence that evening, finding a letter on Appellant's computer purportedly written in December of 2011 by Victim to Appellant. The letter detailed the deterioration of Victim's relationship with Appellant.
Appellant was charged with first-degree murder and armed criminal action. Appellant waived her right to a jury trial. The case was tried by bench trial.
At trial, the State had multiple witnesses testify, including the public safety dispatcher who answered Appellant's 911 call, multiple detectives from the police department, Victim's son-in-law, a medical examiner, and a digital forensic technician. The testimony included an explanation of Victim's injuries, a description of the crime scene, and various other aspects arising from the shooting. Other testimony, by an employee of Sharpshooters shooting range, explained Appellant had visited the range the day before the shooting. A digital forensic technician, who searched Appellant's phone, testified Appellant made multiple internet searches prior to the shooting, such as "Situational Ethics," "Sadistic Abuse," and "The Healthy Way to Forgive Yourself."
The State sought to introduce the letter allegedly written by Victim to Appellant. The digital forensic technician found two pages of the letter scanned into Appellant's laptop and all four pages in Appellant's *896 computer. The letter explained that Appellant and Victim had a good friendship, but the relationship had deteriorated. The letter detailed that Victim felt he had become a target of Appellant's anger, and that Victim was hurt that Appellant did not directly talk to Victim regarding her issues. Victim further wrote "[w]ho are you to be MY judge, jury, and now executioner when it comes to MY family?" The final page consisted of an additional handwritten note signed by "Gary." The State moved to admit the letter into evidence solely based on the digital forensic technician's testimony regarding how he acquired the letter. Appellant objected to the admission of the letter based upon a lack of foundation. The court overruled Appellant's objection, and admitted the letter into evidence.
The defense, at trial, focused on Appellant's mental capacity. She argued she could not form the intent required to be found guilty of first-degree murder. The defense called two psychiatrists and Victim's Wife. Victim's Wife testified Appellant had a good friendship with Victim, but this changed because Appellant believed Victim was treating her poorly. Victim's Wife explained this belief continued even though she told Appellant she was not being abused. Victim's Wife testified that she, Appellant, and Victim attended counseling sessions to help Appellant overcome these issues.
Appellant's interview conducted at the police station the day of the shooting was also admitted into evidence. In the interview, Appellant told the police she had been good friends with Victim, but he had become angry with her for various reasons. Appellant told police she stopped being Victim's "shooting partner," "dance buddy," and "best friend," which made Victim angry.
During closing argument, the State focused on Appellant's actions and argued she clearly knew what she was doing when she went to 8008 Pembroke Drive. The State also referenced the letter by saying Appellant became "judge, jury, executioner of not only [Victim] but of this whole family." The defense's closing argument relied on Appellant's long history of mental illness and argued this illness prevented Appellant from forming the intent necessary for first-degree murder. The trial court found Appellant guilty of the lesser included offense of second-degree murder and armed criminal action. This appeal follows.
Standard of Review
The standard of review for the admission of evidence is abuse of discretion. State v. Primm , 347 S.W.3d 66, 70 (Mo. banc 2011). The trial court has broad discretion in admitting evidence, and we will not disturb an exercise of that discretion unless it is clearly against the logic of the circumstances. Id. On direct appeal, we review the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial it deprived the defendant of a fair trial. State v. Naylor , 510 S.W.3d 855, 862 (Mo. banc 2017). In a bench-tried case the court is allowed more latitude in the admission of evidence. Worthington v. State , 166 S.W.3d 566, 573 (Mo. banc 2005). We presume a judge will not give weight to incompetent evidence, and, as such, it is difficult to base reversible error on the improper admission of evidence in a court-tried case. Id.
Discussion
In her sole point, Appellant argues the trial court abused its discretion by admitting into evidence the letter purportedly written by Victim to Appellant. Appellant contends she was deprived of due process *897 and a fair trial because this letter was not authenticated. Appellant posits she was prejudiced by the admission of this evidence because, if it were not admitted, she might have altered her defense strategy. Additionally, Appellant argues prejudice exists because the State used this evidence in closing argument. The State counters this evidence is relevant because it was found on Appellant's computer, not because of the authorship of the letter. The State posits there was enough circumstantial evidence to determine this letter was stored on Appellant's computer because this is where the digital forensic technician found the document.
"Before a document can be admitted into evidence, the proponent must lay the foundation for the document, including authenticity." State v. Hosier , 454 S.W.3d 883, 899 (Mo. banc 2015). "The authenticity of a document cannot be assumed, but what it purports to be must be established by proof." State v. Swigert , 852 S.W.2d 158, 163 (Mo. App. W.D. 1993). A letter is not authenticated merely because it is written or signed by the person to whom it is attributed. Id. Documents can be authenticated by circumstantial evidence. Hosier , 454 S.W.3d at 899.
Appellant argues the letter was not properly authenticated because no evidence shows Victim actually wrote the letter. Appellant relies on a line of cases explaining the authentication requirements for text messages, and at least one court has applied the standard for admission of letters to text messages. See State v. Harris , 358 S.W.3d 172, 175 (Mo. App. E.D. 2011). The party seeking admission of this evidence must show the text messages were actually written by the person who allegedly sent them. Id. Proof can come in various forms, such as an admission by the author he or she wrote the message or by discovering something distinctive about the text message that can identify the author. Id. In Harris , the text messages were allegedly sent by the victim. Id. at 176. Yet, the State never asked the victim if she sent the messages or identified anything that established the messages were sent by her. Id. The court held there was insufficient evidence to show the victim sent the messages, and, therefore, the evidence was properly excluded by the trial court. Id.
Much like Harris , there is no evidence identifying Victim authored this letter. The State only had the digital forensic technician testify where he found the letter, but the party introducing evidence must show the letter is what it claims to be. In this case, the evidence purports to be a letter from Victim to Appellant. The letter's presence on Appellant's computer does not prove Victim was the author of the letter, and no other evidence shows this is the case. The letter was improperly admitted. See State v. Pylypczuk , 527 S.W.3d 96, 99 (Mo. App. W.D. 2017) (stating a document must meet several foundational requirements, including authenticity, before it can be admitted into evidence); Heutel v. Stumpf , 783 S.W.2d 421, 422 (Mo. App. E.D. 1989) (holding trial court did not abuse its discretion by refusing to admit a letter and minutes from a family meeting because there was no foundation showing the document's authenticity).
The State contends the authorship of the letter is unimportant because this evidence is relevant solely because it was found on Appellant's computer. At least one court has held that authorship is immaterial in certain circumstances. See State v. Charlton , 114 S.W.3d 378, 387 (Mo. App. S.D. 2003). In Charlton , the appellant was convicted of manufacturing methamphetamine, and he argued the trial court improperly admitted multiple exhibits, like a book called "Secrets of Methamphetamine *898 Manufacture," pages from a planner that contained a "recipe" for methamphetamine, and a notebook that contained formulas, phone numbers, and pager numbers. Id. at 386. The appellant argued the evidence was improperly admitted because these materials were only relevant if he was the author, but no testimony established that he wrote these materials. Id. at 387. In that case, the court determined authorship was immaterial because the mere presence of these materials showed the appellant knew of the methamphetamine lab in his bedroom closet. Id.
Unlike Charlton , the authorship of the letter is important here. Regardless of the use for this evidence, it is important to know that Victim wrote the letter. For example, if this evidence is supposed to show tension in the relationship between Victim and Appellant, then it is very important to know the letter was exchanged between them. A letter cannot be authenticated merely because it is purported to be written or signed by the person to whom it is attributed. Swigert , 852 S.W.2d at 163. There was no attempt to provide other evidence establishing that Victim wrote this letter. The State explained that the letter was found on Appellant's computer. At best, this only shows the letter was on Appellant's computer, not that Victim was the author.
Circumstantial evidence can also authenticate a private writing. See Hosier , 454 S.W.3d at 899. In Hosier , the police searched the defendant's car and found a handwritten note. Id. The defendant argued this evidence was improperly admitted because the State did not prove the note was authored by the defendant. Id. at 898. The Supreme Court of Missouri, however, determined the note was authenticated by circumstantial evidence. Id. at 899. Specifically, the Court referenced that the note was found in a car the defendant used to flee the scene of his crime, the note was on the same paper as a previous note the defendant left for his neighbor, and the statements were consistent with other communications regarding the defendant's relationship with the victim. Id. Based on this evidence, the court held that the note was properly admitted. Id.
There is some circumstantial evidence here, but it is not strong enough to authenticate the note. In comparison to Hosier , the letter purportedly written by Victim is consistent with other evidence regarding his relationship with Appellant. Yet, in contrast, there is no other evidence which speaks to the author of the letter. This evidence was found on Appellant's computer, not in any of Victim's possessions, and no other evidence assists in attempting to identify the author. Thus, this case is distinguishable from Hosier . The circumstantial evidence here is insufficient to authenticate the letter.
Appellant must show prejudice, however, to obtain appellate reversal. Naylor , 510 S.W.3d at 862. In a bench trial, error in admitting evidence is generally not prejudicial, unless the trial court relied on the inadmissible evidence in making its findings. State v. Sladek , 835 S.W.2d 308, 313 (Mo. banc 1992) (quoting State v. Leigh , 580 S.W.2d 536, 545 (Mo. App. E.D. 1979), rev'd on other grounds Leigh v. State , 639 S.W.2d 406 (Mo. App. E.D. 1982) ). Upon appellate review, the court presumes the lower court did not give weight to incompetent, or erroneously admitted, evidence. Worthington, 166 S.W.3d at 573.
Here, Appellant does not try to show the trial court relied on this evidence in finding Appellant guilty of second-degree murder and armed criminal action. Since there is no evidence showing the court relied on the letter and because we assume the court disregarded the most improper material, this error was non-prejudicial.
*899 As such, Appellant is not entitled to relief.
Further, improperly admitted evidence is not prejudicial if there is other similar evidence, which was properly admitted. State v. Collis , 139 S.W.3d 638, 641 (Mo. App. S.D. 2004). Here, other evidence was similar to the contentions of the letter. For example, Victim's Wife testified Appellant and Victim used to be good friends and Appellant's mental illness negatively affected this relationship. Victim's Wife explained that she, Appellant, and Victim attended counseling sessions to address the tension in their relationship. Further, in her interview admitted into evidence, Appellant said she had been good friends with Victim, but he had become angry with her for various reasons. Namely, Appellant stopped being Victim's "shooting partner," "dance buddy," and "best friend," all of which fueled Victim's anger. Thus, there was sufficient similar evidence properly admitted to make the admission of the letter non-prejudicial.
Appellant's argument that the defense might have altered its strategy without this evidence is meritless. Appellant does not try to offer an alternative defense strategy, but, instead, argues there is no telling what the defense would have done without the letter. Yet, the sentiments expressed in the letter can be found elsewhere in evidence, so it is unclear why exclusion of the letter would have prompted a change in defense strategy. Appellant's point is denied.
Conclusion
For the reasons stated above, we affirm.
Robert G. Dowd, Jr., J. and Mary K. Hoff, J. concur.

The residence at 8008 Pembroke was owned by Victim and Victim's Wife, but was being rented by Victim's son-in-law. On the weekend of the shooting, Victim's son-in-law and his wife were out of town visiting Louisville, and Victim was taking care of their dogs.