

# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107954 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Timothy J. Boyer |
| MUYA ABDI, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 25, 2020 |

## Introduction

Muya Abdi ("Abdi") appeals from the trial court's judgment following a jury trial convicting Abdi of two counts of assault in the first degree, two counts of armed criminal action, and one count of unlawful use of a firearm arising out of a shooting incident. In Point One, Abdi contends the trial court erred in denying his motion for a judgment of acquittal because there was insufficient evidence for the jury to conclude that Abdi was the shooter or that he was aware of the likely presence of the victim. In Point Two, Abdi alleges the trial court abused its discretion in admitting two letters purportedly authored by Abdi because the letters were not authenticated. Because there was sufficient evidence from which the jury could conclude that Abdi was the shooter and was aware of the likely presence of the victim, the trial court properly denied the motion for a judgment of acquittal. Because the letters were sufficiently authenticated, the trial court did not abuse its discretion in admitting the evidence. Accordingly, we affirm the judgment of the trial court.

## Factual and Procedural History

Evidence of the following facts was adduced at trial. On August 23, 2017, Toniesha Smith ("Smith") and her then-boyfriend Noor Haji ("Haji") were engaged in an argument while each was driving their respective car. Victim was driving to visit her mother-in-law. Her child, brother, sister-in-law, and her sister-in-law's three children were with her. Victim arrived at her mother-in-law's house which was down the street from where Smith and Haji's argument was occurring. Victim's mother-in-law as well as multiple neighbors were outside when Victim arrived. Smith's and Haji's cars scraped each other. Victim was holding her child at the time and saw someone about five houses away from her pointing a gun. Victim began to run. Victim was shot in the face as she was running away, causing Victim to lose her right eye. A bullet also pierced Smith's car, which police recovered from the trunk.

Smith told police that a friend of Haji's, who she knew as "Little Haiti," was present at the time of the shooting. Smith identified Abdi as "Little Haiti" at trial. Smith testified that she did not see Abdi fire a gun but that other persons standing on the street at the time of the shooting identified "Little Haiti" as the shooter. Police officers Jonathan Wyman and Michael Ross responded to the scene of the shooting. Officers Wyman and Ross reported that Smith said that she saw "Little Haiti" open fire. Additionally, a Facebook profile for a "Little Haiti" identified Abdi as "Little Haiti." Police took Abdi into custody following a traffic stop in which he was a passenger in a car being driven by Haji. In response to questioning, Abdi admitted that he shot at Smith after hearing what he believed was a gunshot.

In November 2017, the State charged Abdi by indictment with five counts. Counts I and II charged Abdi with assault in the first degree and armed criminal action for shooting Victim. Counts III and IV charged Abdi with assault in the first degree and armed criminal action for

shooting at Smith. Count V charged Abdi with unlawful use of a firearm for discharging his firearm into a motor vehicle.

Prior to trial, Judge Rex Burlison ("Judge Burlison") received an envelope from the jail where Abdi was being held pre-trial. The envelope was labeled as being sent by Abdi. The envelope contained two letters, one addressed to Judge Burlison ("the Burlison Letter") and one addressed to Victim ("the Victim Letter") (collectively, "the Letters"). Each letter was signed "Muya Abdi." The Burlison Letter stated that Abdi was "writing [Judge Burlison] in regards to [Abdi's] conduct and responsibility which [Abdi] would like to take accountability for/of." The Burlison Letter also stated, "I accidentally struck Victim [] with gun fire[,]" and contained multiple other acknowledgements of having shot Victim. The Burlison Letter also contained details of the shooting, including that the shooting was precipitated by a "lovers quarrel" and that Victim was with her child at the time. The Burlison Letter maintained that Abdi was nevertheless not guilty of first-degree assault and armed criminal action. The Victim Letter stated, "My name is Muya Abdi, and I am the individual responsible for unintentionally shooting[,]" and proceeded to repeatedly apologize to Victim.

Prior to trial, Abdi filed a motion-in-limine seeking to prohibit the State from introducing the Letters into evidence. During a hearing on the motion, the trial court took judicial notice of the Letters, but did not rule on whether the Letters were actually from Abdi. Subsequently, the trial court denied the motion-in-limine, ruling that the State would be allowed to present the Letters to the jury provided they were authenticated at trial. The trial court noted that the Letters were postmarked in Abdi's name, were sent from the jail where Abdi was being held, and bore signatures matching Abdi's signature on other documents. The trial court clarified that it was not

prohibiting the State or Abdi from making any arguments about the believability or veracity of the Letters.

During the State's case-in-chief, the State asked the trial court to take judicial notice of the Letters and to publish the Letters to the jury. Abdi objected to the introduction of the Letters based upon a lack of foundation and renewed his previous objections raised in his motion-in-limine. The trial court took judicial notice of the Letters and admitted them into evidence. The State proceeded to read the Letters aloud to the jury.

Abdi moved for a judgment of acquittal at both the close of State's evidence and the close of all evidence due to insufficient evidence. The trial court found the State had made a submissible case and denied both motions.

The jury found Abdi guilty on all five counts. The trial court sentenced Abdi to fifteen years in prison on each of the two counts of first-degree assault and two counts of armed criminal action. The trial court sentenced Abdi to four years on Count V for unlawful use of a firearm. The trial court ordered all sentences to be served concurrently. Abdi now appeals.

## Points on Appeal

In Point One, Abdi argues the trial court erred in denying his motion for a judgment of acquittal on the charge of first-degree assault against Victim and the associated charge of armed criminal action because there was insufficient evidence that Abdi was the shooter or that Abdi was aware of Victim's likely presence to satisfy the required intent. In Point Two, Abdi contends that the trial court abused its discretion in admitting the Letters because they were unauthenticated hearsay.

## Discussion

Because Point One concerns the sufficiency of the evidence and Point Two concerns whether some of that evidence was properly admitted, we address Point Two first.

4

**I.    Point Two—Admission of the Letters**

    A.    <u>Standard of Review</u>

We review evidentiary decisions for abuse of discretion. <u>State v. McBenge</u>, 507 S.W.3d 94, 112 (Mo. App. E.D. 2016) (internal citation omitted). "A trial court abuses its discretion when its decision is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." <u>Id.</u> (internal quotation omitted). Furthermore, a trial court only abuses its discretion if its decision prejudices the appellant such that "there is a reasonable probability the trial court's alleged error affected the outcome of the trial." <u>Id.</u> (internal citation omitted).

    B.    <u>Analysis</u>

Abdi's second point on appeal challenges the trial court's decision to admit the Letters because they were hearsay and were not authenticated. We note that in the argument section of his brief, Abdi focuses on the issue of the authenticity of the Letters and does not specifically address any hearsay issues relating to his second point on appeal. However, Abdi's hearsay argument claims are necessarily predicated on his argument that the Letters lack authentication. Accordingly, we focus on Abdi's contention that the Letters were inadmissible because they were not authenticated.

A document must be authenticated before it can be admitted into evidence. <u>State v. Hosier</u>, 454 S.W.3d 883, 899 (Mo. banc 2015) (internal citation omitted). The mere fact that a writing bears a purported signature of the alleged author is not sufficient to authenticate the writing. <u>State v. Hein</u>, 553 S.W.3d 893, 898 (Mo. App. E.D. 2018) (internal citation omitted). However, authenticating a writing as by the alleged author "should not be an unduly burdensome requirement[.]" <u>State v. Harris</u>, 358 S.W.3d 172, 175 (Mo. App. E.D. 2011). Courts may rely upon circumstantial evidence to authenticate a writing. <u>Hosier</u>, 454 S.W.3d at 899 (internal

5

citation omitted). So long as sufficient evidence justifies the trial court's admission of evidence as authentic, any weaknesses as to the authenticity of the evidence are for the jury to consider. State v. Snow, 437 S.W.3d 396, 403 (Mo. App. S.D. 2014) (internal citation omitted) ("[W]eaknesses in the evidence authenticating the writing should be for the jury to consider in determining the weight the jury accords the writing."); Harris, 358 S.W.3d at 175–76 ("Once the evidence is admitted, it is still the province of the jury to determine its weight.").

Abdi correctly notes that the presence of his purported signature alone is insufficient to authenticate the Letters. See Hein, 553 S.W.3d at 898. But the trial court did not rely solely upon the purported signature when admitting the Letters into evidence. The record before us contains overwhelming circumstantial evidence of authentication. See Hosier, 454 S.W.3d at 899 (internal citation omitted); Hein, 553 S.W.3d at 898 (internal citation omitted). First, the Letters were sent from the jail where Abdi was being held. Second, the Letters correctly identified the Victim of the shooting. Third, the Burlison Letter contained the specific facts that Victim was with her child at the time she was shot and that the shooting was precipitated by a "lovers quarrel." Finally, the Burlison Letter not only identified the precise charges for which Abdi was being tried, but raised arguments to rebut the charges, something Abdi was more incentivized to do than anyone else being held at the same jail. Properly authenticating a writing is not meant to be unduly burdensome, and the circumstantial evidence here overwhelmingly tends to show the writer of the Letters was someone in the same location as Abdi, with the same knowledge as Abdi, and with the same incentives as Abdi—namely, Abdi. See id.; Harris, 358 S.W.3d at 175.

Abdi alleges that the handwriting in the Letters is inconsistent at times and raises the *possibility* that a cellmate could have accessed Abdi's files and written the Letters. The record

6

includes no factual support for such argument, which remains largely speculative. This argument goes to the weight the jury should assign to the Letters rather than their admissibility. See Snow, 437 S.W.3d at 403 (internal citation omitted); Harris, 358 S.W.3d at 175–76. Indeed, the trial court specifically allowed Abdi to challenge the believability or veracity of the Letters.

The record contains sufficient circumstantial evidence beyond Abdi's purported signature to establish that the Letters were authored by and sent from Abdi. See Hosier, 454 S.W.3d at 899 (internal citation omitted). Accordingly, the Letters were properly authenticated, and the trial court did not abuse its discretion in admitting the Letters into evidence. See id.; See McBenge, 507 S.W.3d at 112 (internal citation omitted). Point Two is denied.

## II.    Point One—Sufficiency of the Evidence

### A.    Standard of Review

We review denials of motions for acquittal solely to determine whether the State adduced sufficient evidence to sustain the convictions. State v. Sistrunk, 414 S.W.3d 592, 596 (Mo. App. E.D. 2013) (internal citation omitted). "Appellate review of sufficiency of the evidence is limited to whether the state has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." Hosier, 454 S.W.3d at 898 (internal citation omitted). We view the evidence in the light most favorable to the verdict and grant all reasonable inferences to the State. Id. (internal citation omitted).

### A.    Analysis

Abdi first argues that the record contains insufficient evidence to prove Abdi was the shooter. This frivolous argument is wholly without merit. Taking the evidence in the light most favorable to the verdict, Smith identified Abdi as the shooter, Abdi admitted during questioning that he had opened fire, and Abdi confessed to shooting Victim in the Letters. See id. This

7

evidence was more than sufficient to prove beyond a reasonable doubt that Abdi was the shooter. See Hosier, 454 S.W.3d at 898 (internal citation omitted); see also State v. Harris, 535 S.W.3d 769, 778 (Mo. App. E.D. 2017) (citing State v. Bolder, 635 S.W.2d 673, 679 (Mo. banc 1982)) (internal citation omitted) (providing that even "the testimony of a single eyewitness, if believed by the jury beyond a reasonable doubt, is sufficient to establish the identity of a defendant").

Abdi next argues the record lacked sufficient evidence to prove he had the requisite intent to commit first-degree assault and the associated charge of armed criminal action against Victim. "A person commits the offense of assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Section 565.050.[1] Importantly, Missouri law recognizes that a charge of causing or attempting to cause serious physical injury will not stand "if the person is unaware of the likely presence of the injured person at the time the person acts[.]" State v. Whalen, 49 S.W.3d 181, 187 (Mo. banc 2001), *overruled in part on other grounds by* State v. Claycomb, 470 S.W.3d 358, 361–62 (Mo. banc 2015).

Abdi relies on Whalen, in which the Missouri Supreme Court vacated two first-degree assault convictions because the State failed to prove that the defendant was aware of the likely presence of the two victims. See id. Abdi reasons that the facts of the present case are analogous to the facts in Whalen and compel the same result here. See id. In Whalen, police officers had arrived at the defendant's residence. Id. at 183. The defendant was in his bedroom when three officers entered the residence. Id. The three officers approached the bedroom, with one officer taking the lead. Id. The defendant shot the first officer who reached the doorway. Id. The other two officers also were injured by the shotgun blast, but, importantly, were not

---

[1] All Section references are to RSMo (2016).

8

close enough to the doorway to see or be seen by the defendant. Id. at 183–84. The defendant announced from his bedroom window that he had shot an officer, and that he would shoot anyone else who attempted to enter his residence. Id. at 184. Based on this record, Whalen found that a reasonable juror could not conclude beyond a reasonable doubt that the defendant was aware of the two other officers when he fired the shotgun. Id. at 185. There was no evidence suggesting that the defendant either saw or heard the other two officers, and the defendant's post-shooting statement that he would shoot anyone else who entered the residence showed he was unaware that two other officers were already inside. Id. Accordingly, Whalen determined insufficient evidence supported the defendant's convictions on first-degree assault and associated armed criminal action.[2] Id. at 187.

Abdi's reliance on Whalen is unavailing because here, in contrast, sufficient evidence exists to permit a reasonable juror to conclude that Abdi was aware of Victim's likely presence when he shot his gun. See id.; Hosier, 454 S.W.3d at 898. Both Abdi and Victim were outside in broad daylight. Abdi and Victim were approximately five houses away from each other, easily allowing a jury to find that Abdi could see Victim. In Whalen, a wall separated the defendant and the victims at the time of the shooting. See Whalen, 49 S.W.3d at 183–84. Critically, the victims in Whalen could not see the defendant at the time of the shooting. Id. Here, Victim not only saw Abdi, but she saw Abdi wielding a gun as she began to run away. Granting the State all reasonable inferences, the jury could reasonably infer that Abdi could see Victim just as clearly as Victim saw Abdi with a gun in hand. See Hosier, 454 S.W.3d at 898; see also State v. Curtis, 497 S.W.3d 381, 384 (Mo. App. E.D. 2016) (holding there was sufficient evidence that the defendant was aware of the likely presence of the victims in part because the

---

[2] However, Whalen was remanded with instructions that the trial court enter a judgment reflecting conviction for second-degree assault and associated armed criminal action. Whalen, 49 S.W.3d at 188.

victims could see the defendant shooting); State v. McCrady, 364 S.W.3d 709, 711–12 (Mo. App. E.D. 2012) (holding there was sufficient evidence that the defendant was aware of the likely presence of the victims even where the shooting occurred at night, visibility was low, and the victims could not clearly see the shooter).

Because there was significant evidence from which a reasonable juror could have concluded that Abdi was the shooter and that Abdi was aware of the likely presence of Victim when he opened fire, we hold that sufficient evidence supports sustaining Abdi's convictions on first-degree assault and armed criminal action. See Hosier, 454 S.W.3d at 898; Whalen, 49 S.W.3d at 187. Accordingly, the trial court properly denied Abdi's motion for a judgment of acquittal. See Sistrunk, 414 S.W.3d at 596. Point One is denied.

Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.